SHELTON ENGINEERING CONTRACTORS, LTD.,
AN HAWAIIAN CORPORATION *v.* HAWAIIAN
PACIFIC INDUSTRIES, INC., AN HAWAIIAN
CORPORATION, OWNER, ET AL.

No. 4690.

SHELTON ENGINEERING CONTRACTORS, LTD.,
AN HAWAIIAN CORPORATION *v.* MARK CON-
STRUCTION, INC., AN HAWAIIAN CORPORA-
TION, ET AL.

No. 4691.

JUNE 13, 1969.

RICHARDSON, C.J., ABE, LEVINSON, JJ., AND CIRCUIT JUDGE
KING IN PLACE OF MARUMOTO, J., DISQUALIFIED,
AND CIRCUIT JUDGE HAWKINS ASSIGNED
BY REASON OF VACANCY.

OPINION OF THE COURT BY RICHARDSON, C.J.

Shelton Engineering Contractors, Ltd., subcontractor, filed an assumpsit action against Mark Construction, Inc., the prime contractor, and Bank of Hawaii, garnishee, on November 4, 1966. Five months later, the subcontractor filed a notice of mechanic's and materialman's lien affecting forty-four lots in the Enchanted Hill Estates, Unit VII, and subsequently filed a suit to foreclose the lien against Hawaiian Pacific Industries, Inc., the owner. Although Mark Construction had no alleged interest in the land as an owner, it was made a party to the action as prime contractor. The single underlying debt was alleged to be $14,500 in the assumpsit action and $14,714.34 in the suit to foreclose the mechanic's lien.

The following facts are crucial to the appeals in both cases:

1. Pursuant to a stipulation in the assumpsit action by Shelton Engineering Contractors, Ltd. and Mark Construction, Inc., the trial court issued on November 14, 1966, an order directing the garnishee to withhold the sum of $18,000 and authorizing the release of the balance of the fund.

2. The prime contractor filed a counterclaim in the assumpsit action alleging that the subcontractor had (a) failed to complete the contract thereby owing the prime contractor an unascertainable amount incurred in completing the job; (b) committed negligence on the job for which the prime contractor would have to expend some

money; and (c) failed to complete the job in the stated time and therefore was liable for liquidated damages.

3. On June 22, 1967, the prime contractor filed a motion for attachment with affidavit stating the subcontractor was indebted to the prime contractor in the sum of $20,000 over and above all just credits and offsets, and filed a bond in the amount of $40,000.

The writ of attachment was issued on June 22, 1967.

4. On June 29, 1967, the subcontractor filed a motion to strike the affidavit of attachment and to vacate and set aside the attachment asserting that (a) the affidavit of George R. Ariyoshi, Esq., was invalid because it was in violation of Rule 11 of the Hawaii Rules of Civil Procedure; (b) exempt property had been wrongfully attached; (c) the value of the attached property was far in excess of the claim by the prime contractor; and (d) the prime contractor's claim was unliquidated and sounded in tort so that attachment should not have been available to him under R.L.H. 1955, § 233-2 (HRS § 651-2).

The court denied this motion on July 19, 1967.

5. The sheriff executed the writ of attachment on July 25, 1967.

6. On June 14, 1967, in the mechanic's lien proceeding, the prime contractor deposited $29,428.68 to discharge the lien on the property pursuant to R.L.H. 1955, § 193-43.1 (1965 Supp.) (HRS § 507-45), and by order of the court, the lien was discharged.

7. On June 28, 1967, Hawaiian Pacific Industries, the owner, moved to dismiss the complaint against it inasmuch as the lien had been discharged.

8. On the same date, the prime contractor moved to dismiss the foreclosure of lien complaint against it on the ground that since an assumpsit action supported by adequate garnished funds was pending, the foreclosure action should be abated and the cash deposit returned.

9. The subcontractor then filed a memorandum in opposition to the motions to dismiss the complaint stating (a) that the motions were defective because of failure to comply with the Hawaii Rules of Civil Procedure in that it was unsupported by a memorandum of authorities; that it failed to comply with the ten-day notice requirement for summary judgments under Rule 56; and that the prime contractor and owner had not marshalled a record to show there was no genuine issue as to material fact; (b) that the deposit of money did not destroy the subcontractor's right to action in the foreclosure suit.

10. The court granted the motions to dismiss on July 10, 1967, and directed that the bond be substituted for the amount garnished.

11. The prime contractor and owner filed a memorandum in support of the motions to dismiss on July 12, 1967.

12. Pursuant to its decision in the suit to enforce the mechanic's lien, the court ordered release of the $18,000 previously garnished in the assumpsit action.

The subcontractor appeals from (1) the order granting the motions to dismiss the complaint in the action to enforce the mechanic's lien (#10); (2) the order substituting the deposit bond for the garnishment fund and the subsequent release of the amount held by the garnishee (#10 and #12), and (3) the order denying his motion to strike the attachment affidavit and to vacate the writ of attachment (#4).

I. The Order Dismissing the Complaint in the Action to Enforce the Mechanic's Lien.

A. The motion to dismiss as to Hawaiian Pacific Industries, Inc., the owner.

The affidavit accompanying this motion indicates that it was intended to be a motion under H.R.C.P., Rule 12(b) because the movant was asserting that since the lien had been discharged by the prime contractor, the owner had

no interest to defend and therefore no relief could be granted against it on any claim.

The parties do not dispute that the motion, accompanied by the affidavit which was not excluded by the court, was to be disposed of under H.R.C.P., Rule 56. That rule states in part that "the motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The subcontractor, appellant herein, complains that the motion should be stricken because it was served on June 28, 1967, only five days before the date set for the hearing. Although movant did not comply with the literal requirement of the rule, we think that he complied substantially with the notice requirement of the rule as expressed in *Clarke* v. *Civil Service Commission,* 50 Haw. 169, 434 P.2d 312 (1967). This court invalidated summary judgment in that case because a time for hearing had not been fixed, the adverse party had no notice of a hearing, and no hearing had in fact been held. Appellant herein had notice of a hearing and had the opportunity to be heard; he has not demonstrated he has been harmed by not having a full ten days of notice. We are reluctant to strike a motion for that reason alone even though we sympathize with the fact that he was under great pressure to submit opposing memorandum.

Appellant further complains that the order granting the dismissal should be vacated on grounds that movant has failed to meet his burden of marshalling a record to support summary judgment. Although movant failed to file in time a memorandum of law in support of his motion

as required by Rule 8 of the circuit court of the first circuit of the State of Hawaii, we think appellant suffered no harm because the affidavit accompanying the motion clearly stated the legal basis for the motion and made adequate reference to the relevant documents upon which judgment could be made. The affidavit referred to the stipulation filed in M.L. No. 1879 and the order by which the lien was discharged upon the deposit of $29,428.68 with the chief clerk of the first circuit. The affidavit further stated that Hawaiian Pacific was not a party to the contract from which arose the underlying debt. Since Hawaiian Pacific did not itself make the cash deposit, the result is that it no longer had an interest to defend in the suit to enforce the mechanic's lien. In addition, since it was not personally liable on the contract, it had no assumpsit action to defend, and therefore, the owner was properly dismissed as a defendant in the suit.

Appellant lastly complains that summary judgment was erroneously granted because it destroyed appellant's statutory right to a mechanic's lien. We disagree. Appellant at all times had his right to an action in assumpsit against the prime contractor. He also had the right to foreclose on the lien as provided by statute, R.L.H. 1955, § 193-45 (HRS § 507-47). Appellant misconstrues, however, the reason for the statute and wrongly interprets the operation of certain provisions in the law.

The purpose of the mechanic's lien statute is to provide a manner in which an artisan or materialman can recover amounts due him from persons benefiting from his services even when there was no direct contractual relationship between them. The owner benefits when his contractor subcontracts with others, so it is only fair that when the subcontractor has benefited the premises, he should have the additional statutory remedy for recovery of amounts due. The law was intended to compensate a

248 

person equitably, and was never intended to operate in a manner which might enable the subcontractor to recover twice or to oppress the defendants to his claim.

R.L.H. 1955, § 193-41 (HRS § 507-42) specifically provides that an artisan or materialman "shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated * * *."

The lien is clearly upon property and any improvements thereon.

The question arises as to the effect of the discharge of the lien under R.L.H. 1955, § 193-43.1 (1965 Supp.) (HRS § 507-45) which states that a lien on a subdivision of ten or more lots can be discharged by the owner, lessee, principal contractor or intermediate subcontractor by depositing cash with the court to twice the amount of the claim for the lien, upon the condition of "payment of any sum for which the claimant may obtain judgment upon his claim."

Clearly, the lienor has but one claim—that for the amount owing under the contract. The lien statute does not grant him a second claim, but merely an alternate remedy because the action to foreclose the lien must allege the contract upon which it is based. R.L.H. 1955, § 193-45 (HRS § 507-47) states:

"* * * The complaint, in addition to setting forth the ordinary allegations of assumpsit, may pray for the foreclosure of the lien as to which notice has been filed and may pray for any incidental relief according to the usual practice of courts of equity and according to this section in enlargement thereof. * * *"

Under the statutory provision, the deposit of money discharges the lien. The action to foreclose the lien no longer exists; appellant, therefore, was left to the "incidental relief," including the right to proceed on his claim

against the prime contractor. Since Hawaiian Pacific Industries was not a party to the contract which underlay the now discharged lien, and since it had not made the money deposit into court, it had no interest to defend and no judgment could lawfully be entered against it. Therefore, summary judgment was correctly entered in its favor.

B. The motion for dismissal of the complaint against Mark Construction, prime contractor.

Although the motion does not meet the desirable standards of stating with specificity the grounds for dismissal, the accompanying affidavit sufficiently indicates that it is premised on the fact that the subcontractor had a pending assumpsit action against movant on the same cause of action and in which a sum in excess of the claim had been garnished. Movant had already begun to defend that action by filing an answer and a counterclaim, and had also attached certain properties of the appellant. Movant was essentially asserting a matter in abatement, and not asking for summary judgment.

Abatement almost always refers to a procedural or jurisdictional defect which can be cured rather than to a substantive issue. *Thomas* v. *Navas,* 47 Haw. 605, 393 P.2d 645 (1964). In the instant case, the problem is that of a pending case on the same issue, assumpsit, involving the same plaintiff and defendant, and asking for the same relief, payment of the amount due. The Hawaii cases clearly indicate that where the party is the same in a pending suit, and the cause is the same and the relief is the same, a good plea in abatement lies. *Yee Hop* v. *Nakuina,* 25 Haw. 205 (1919) ; *Oahu Lumber & Bldg. Co.* v. *Ah Yok,* 11 Haw. 416 (1898).

We hold the motion satisfactory in form and timely made. We specifically reject appellant's contentions that the claim, parties and relief are not identical for the reasons stated in subsection A of this part.

II. Authority of the Court to Substitute the Cash Deposit for the Garnished Sum.

In the foreclosure action dated July 10, 1967, the court ordered that the cash deposit be left with the clerk of the court for the "purpose of satisfying any judgment that may be entered against Mark Construction, Inc., in favor of Shelton Engineering Contractors, Ltd." on appellant's claim upon the contract. By an appropriate order dated the same day and filed in the assumpsit record, the court ordered that the garnished sum be released.

The law is quite clear that the cash deposit is conditioned for payment of any judgment on the debt underlying the lien, HRS § 507-45 specifically providing that:

"Any mechanics' and materialmen's lien which covers an entire subdivision of ten or more lots may be discharged at any time by the owner, lessee, principal contractor, or intermediate subcontractor filing with the clerk of the circuit court of the county in which the property is located or with the assistant registrar of the land court (if registered land is affected), cash in twice the amount of the sum for which the claim for the lien is filed, conditioned for the payment of any sum for which the claimant may obtain judgment upon his claim."

Therefore, the court may order that the sum be transferred to the pending assumpsit action.

The release of the garnishment fund is another matter, however, because the power to release garnishment funds is extremely limited by the statute. R.L.H. 1955, § 237-1, as amended (HRS § 652-1(d)), provides:

"(d) Garnishee fund excessive. At any time after service of summons, the court, upon the consent of the plaintiff or upon motion of the defendant or of the garnishee and notice to the plaintiff, shall determine whether the garnishee fund is excessive in amount in

comparison with subsection (a) of this section or with the judgment rendered and may thereupon release the remainder thereof from being so secured."

Subsection (a) states in part:

"* * * The cumulative total value of the fund, in advance of final judgment, shall be no more than shall be sufficient to meet the claim of the plaintiff together with cost and legal interest. Any excess in the fund shall be released by the court pursuant to subsection (d) of this section. No part of the garnishee fund may be otherwise disposed of by the garnishee except as provided in this chapter."

Literally speaking, the statutory provisions do not permit the total release of the garnished funds due to substitution by a bond from a suit which has been abated.

It is our opinion that in creating this ancillary proceeding to protect creditors, the legislature did not consider every possible situation. The one at hand is certainly unusual in that by the literal interpretation of the statute, the subcontractor would be able to tie up more than $45,000 to satisfy a $14,500 claim. In this day, when equity and law have merged, the solution is a simple one. Common sense and fairness dictate that the trial court exercise discretion in the substitution of funds, provided the parties are not prejudiced. The trial court substituted a $29,000 cash deposit for the $18,000 garnished fund. We fail to see that appellant was prejudiced.

III. Order Denying the Motion to Strike the Affidavit of Attachment and to Vacate the Writ of Attachment.

We do not reach the merits of the appellant's argument because an order denying the motion to strike the affidavits and to vacate the writ of attachment is not appealable.

This court has held that an order, to be appealable,

must be final. Finality refers to the nature and effect of the order rather than its chronological position in the case.

"* * * It is difficult, perhaps impossible, to define accurately what is or what is not a final decision for the purpose of appeal. A 'final' decision for this purpose is not necessarily in every instance the 'last' decision in a case. The effect of a decision would seem to be a better test of its finality than the stage at which it was rendered. * * *" *Barthrop* v. *Kona Coffee Co.*, 10 Haw. 398, 400 (1896).

That case involved a demurrer by defendant which had been denied and from which defendant appealed. This court held that the order was not appealable because it was not a final determination of substantial rights.

The rule suggests that certain seemingly interlocutory orders could be final in nature and thus appealable. For example, in *Swift & Co.* v. *Compania Caribe*, 339 U.S. 684 (1950), the district court had filed an order vacating an attachment. The Circuit Court of Appeals affirmed. On appeal to the United States Supreme Court, the question was raised as to the jurisdiction of the court of appeals to entertain an appeal of that order. The United States Supreme Court held the order appealable because a later review of an order dissolving an attachment would be meaningless because the vessel would be released and events could happen which would make restoration of attachment only theoretically possible. The Court further stated:

"* * * The situation is quite different where an attachment is upheld pending determination of the principal claim. Such was *Cushing* v. *Laird*, 107 U.S. 69, which is urged on us. In such a situation the rights of all the parties can be adequately protected while the litigation on the main claim proceeds." (p. 689)

The order granting attachment being unappealable,

and the other orders being affirmed, the assumpsit case is remanded for further proceedings.

*Joseph A. Ryan* (*Ryan & Ryan* of counsel) for appellant.

*George R. Ariyoshi* for appellees.