KATHERINE G. SEIBEL AND MASON E. SEIBEL, AND MASON E. SEIBEL, as Temporary Administrator of the Estate of BARBARA KATHLEEN SEIBEL, Deceased, Plaintiffs-Appellants, v. CITY AND COUNTY OF HONOLULU, Defendant-Appellee, v. PAUL ABRAHAM LUIZ, Third-Party Defendant

NO. 6278

NOVEMBER 6, 1979

RICHARDSON, C.J., OGATA, MENOR, JJ.
RETIRED JUSTICES MARUMOTO AND KOBAYASHI,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY OGATA, J.

This is an appeal from an order dismissing the plaintiffs-appellants' complaint and action with prejudice following the

granting of the defendant-appellee's motion to dismiss or for summary judgment. Plaintiffs-appellants are Katherine G. and Mason E. Seibel and Mason E. Seibel as Temporary Administrator of the Estate of Barbara Kathleen Seibel (hereinafter "appellants"). The question before us is the legal responsibility of the defendant-appellee, City and County of Honolulu (hereinafter "appellee" or "city") under the theory of respondeat superior for the alleged negligence of the prosecuting attorney's office in failing to take action to control the conduct of a third party criminal defendant who had been placed on conditional release.[1] More specifically, the question to be resolved is whether the appellants have stated a cause of action against the appellee for damages sustained by them as a result of the murder of their 15-year old daughter, Barbara, by one Paul Abraham Luiz, the criminal defendant.[2] We affirm.

Given the posture of the case on appeal, we accept as true the facts set forth in the complaint, depositions and documents in the trial record. On May 28, 1975, Barbara Kathleen Seibel was murdered by Paul Abraham Luiz (hereinafter "Luiz") who had a history of committing serious sex offenses. At the time of the murder, he was on conditional release undergoing psychotherapy under the care of Dr. Robert D. Kemble, a psychiatrist. The complaint alleged that in 1973,

---

[1] A criminal defendant who has been acquitted on the ground of physical or mental disease, disorder or defect excluding responsibility may be conditionally released pursuant to HRS § 704-411 (1976). This section provides in relevant part:

(1) When a defendant is acquitted on the ground of physical or mental disease, disorder, or defect excluding responsibility, the court shall, on the basis of the report made pursuant to Section 704-404, if uncontested, or the medical evidence given at the trial or at a separate hearing, make an order as follows:

(a) [commitment]

(b) The Court shall order the defendant to be released on such conditions as the court deems necessary if the court finds that the defendant is affected by physical or mental disease, disorder, or defect and that he presents a danger to himself or the person or property of others, but that he can be controlled adequately and given proper care, supervision, and treatment if he is released on condition; or

(c) [discharge].

[2] Luiz was found guilty of the murder of Barbara Kathleen Seibel, but was acquitted by reason of insanity.

Luiz had been charged with "rape, abduction, sodomy, rape in the first degree, sodomy in the first degree and kidnapping involving several women." Luiz's defense counsel engaged Dr. Robert Kemble to examine Luiz and report on his mental condition. In March 1973, Dr. Kemble began treating Luiz on a weekly basis. After various continuances of the criminal cases with respect to the trial date, Luiz's attorney filed a motion to appoint three psychiatrists to examine Luiz. The psychiatrists reported to the court that at the time he committed the offenses, Luiz had suffered from "seriously diminished capacity" to control his conduct. On April 11, 1974, the court denied Luiz's motion for judgment of acquittal. However, on August 1, 1974, the court, upon reconsideration, granted Luiz's motion for judgment of acquittal and for conditional release. The order for conditional release is the basis upon which appellants would hold the city liable and is set out in its entirety in the margin.[3]

---

[3] The order granting defendant's motion for judgment of acquittal and for conditional release provides in full as follows:

Defendant's Motion for Judgment of Acquittal having come on or before thie [sic] Court for hearing on March 7, 1974; and this Court having entered an Order Denying Motions for Judgment of Acquittal filed herein on April 11, 1974; and Defendant subsequently having filed a Motion for Reconsideration of said Motions and Order denying the same on June 25, 1974; and this Court having held additional hearings on said Motion for Reconsideration on July 11, and 25, 1974; and this Court having considered the reports of the examiners and being satisfied that the defendant at the times of the conduct alleged suffered from a physical or mental disease, disorder or defect which substantially impaired his capacity to conform his conduct to the requirements of law and that such impairment was sufficient to exclude responsibility and good cause appearing therefor,

IT IS HEREBY ORDERED that Defendant's Motion for Judgment of Acquittal be and the same hereby are granted on the ground of physical or mental disease, disorder or defect excluding responsibility.

Based upon the reports filed by the examiners and medical evidence given at the hearings on Defendant's Motions for Judgment of Acquittal and for Reconsideration,

The Court finds that the Defendant is affected by physical or mental disease, disorder or defect and that he presents a danger to himself or the person or property of others but that he can be controlled adequately and given proper care, supervision, and treatment if he is released on condition and good cause appearing therefor,

IT IS HEREBY ORDERED taht [sic] the defendant be released upon the condition that he continue his treatment under D. Robert D. Kemble and that he

On August 25, 1974, less than a month after he was conditionally released, Luiz allegedly picked up a prostitute indicating to her that he had thirty dollars to spend on his "date;" then when she was in his automobile, threatened her with a steak knife and in the ensuing struggle, cut her up with the knife, tied her up, drove her to an unfamiliar area, then sodomized her. The next day, the woman reported the incident to the police. The investigation led to Luiz because the woman had seen a police officer cite her assailant. The woman also identified Luiz from pictures which were shown to her. These findings were presented to Charlotte Libman, a deputy prosecuting attorney then employed by the Prosecutor's Office of the City and County of Honolulu, whose duties included reviewing investigations of complaints. Since she had no knowledge of the male suspect's identity, or his past criminal offenses, and also because the complainant was an alleged prostitute, she did not press forward with the complaint. Subsequently, Detective Earl Benson who had initially complained about this incident to Libman, told another deputy prosecutor, Adrienne Sepaniak, who had appeared on the State's behalf at both of Luiz's motions for judgment of acquittal, about Luiz's suspected involvement in the August 25 incident. Neither Libman nor Sepaniak informed the court or Dr. Kemble of the incident. Luiz remained free. From September 1974 to February 1975, Dr. Kemble made three reports to the court but no copies were forwarded to the prosecutor's office. From February to April 1975, Luiz, with Dr. Kemble's permission, was in California, during which time he received no therapy. A month after he returned to Honolulu, he killed Barbara Kathleen Seibel.

In their complaint, appellants alleged that the appellee was negligent in (1) failing to press forward with the complaint against Luiz arising out of the August 25 incident and (2) failing to inform Luiz's psychiatrist, Dr. Robert Kemble or the

---

cause Dr. Kemble to report on the progress of his treatment by letter to this Court with a copy to the prosecuting attorney for the City and County of Honolulu on the first day of each month beginning September 1, 1974 and continuing until further ordered by this Court.

court of Luiz's suspected involvement in the August 25 incident. They further alleged that as a result of the failure to inform Dr. Kemble or the court, Luiz remained free to work his harm. The court below dismissed appellants' claim for failure to state a claim against appellee upon which relief could be granted.

At oral argument before us, appellants apparently abandoned the argument that the prosecutor was negligent in failing to prosecute Luiz for the August 25 incident. Thus the question is whether the City, under the theory of respondeat superior, owed a duty to the Seibels or their daughter the breach of which would permit recovery for their damage resulting from the alleged negligent monitoring of a conditional release by the prosecutor's office.

Whether a defendant is liable to another in damages in any particular case is determined by the application of general tort principles. *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970). A duty of care owed by the alleged wrongdoer to the injured plaintiff is indispensable to negligence liability. But "[d]uty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the question." Prosser, *Palsgraf Revisited*, 52 Mich.L.Rev. 1, 15 (1953). As we said in *Kelley v. Kokua Sales* and *Supply, Ltd.*, 56 Haw. 204, 207, 532 P.2d 673, 675 (1975), ". . . in determining whether or not a duty is owed by the appellees herein, we must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability." An actionable duty is generally owed to foreseeable plaintiffs subjected to an unreasonable risk of harm created by the actor's negligent conduct. *Ajirogi v. State*, 59 Haw. 515, 583 P.2d 980 (1978).

Did the City owe a duty to the appellants or their daughter to control Luiz's behavior or to otherwise warn them of Luiz's potential danger? Generally, a defendant is not responsible for (that is, he has no duty to control) the behavior of a third person unless there is a "special relationship" between the defendant and either the third person who may threaten harm or the party who is the victim of the harm. This rule is set forth in the Restatement (Second) of Torts § 315 (1965):

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.

No contention is made that a special relationship existed between the City and the appellants. Thus, appellants must show the existence of a special relation between the City and Luiz which would create a duty to them. Appellants argue that the appellee stood in a special relationship with Luiz because it (1) had prosecuted him on multiple indictments, appeared for the state throughout the proceedings leading to the conditional release and received the information that Luiz was suspected of yet another violent sex offense, and (2) had been charged with the responsibility of monitoring Luiz's outpatient progress under the terms of the order granting conditional release.

Past prosecution and knowledge of Luiz's suspected involvement in a new offense do not create a special relationship of the nature that would impose a duty upon the City. Thus, we turn to the court order. We have not had occasion to decide whether a duty can be based on a court order. Appellants rely heavily on *Semler v. Psychiatric Institute of Washington, D.C.*, 538 F.2d 121 (4th Cir. 1976), *cert. denied*, 429 U.S. 827 (1976), in which the court imposed a duty based upon the terms of a court order, but their reliance is misplaced. In *Semler* one Gilreath, a probationer with a history of sexual assaults, killed Natalia Semler. At the time of the killing, Gilreath was undergoing psychotherapy as an outpatient at the Institute. The court found the psychiatrist and the probation officer liable in tort because they had released Gilreath from confinement in contravention of the procedure prescribed by a state court order. The duty to treat and confine Gilreath was explicitly set out in the order. As in the instant case, the victim of the third person's violence was unknown. However, in *Semler*, the defendant was by court order given custody of the third person. Neither appellee nor

any prosecutor was given custody of Luiz. The *Semler* court found that in light of the court order which required the doctor to consult the court before changing Gilreath's status, the doctor's duty to warn extended to the judge as a surrogate for potential victims. In addition to *Semler,* there is a line of New York cases which have held that a family court order of protection which authorizes peace officers to aid its holder, can impose a duty on police to provide protection to a holder of such an order. *Sorichetti v. City of New York,* 95 Misc.2d 451, 408 N.Y.S.2d 219 (1978); *Baker v. City of New York,* 25 A.D.2d 770, 269 N.Y.S.2d 515 (1966). However, as in *Semler,* the court orders in those cases placed an express duty on the defendants. The order conditionally releasing Luiz is directed to Luiz and his psychiatrist and not to the appellee. The pertinent language reads:

> It is hereby ordered taht [sic] the defendant be released upon the condition that he continue his treatment under Dr. Robert D. Kemble and that he cause Dr. Kemble to report on the progress of his treatment by letter to this court with a copy to the prosecuting attorney for the City and County of Honolulu on the first day of each month beginning September 1, 1974 and continue until further order by this Court.

In the absence of an express duty, does the order for conditional release contain an *implied* duty to monitor Luiz's conditional release? Appellee directs our attention to the Restatement (Second) of Torts § 319 (1965) which is a specific application of the general rule summarized in § 315. Section 319 provides:

> One who *takes charge* of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm (emphasis added).

Appellee argues that since it was not "in charge" of Luiz, it had no duty to control him. Nowhere is the phrase "takes charge" defined in the Restatement and admittedly, the illustrations provided by the authors of the Restatement indicate that the rule can apply to institutional custodians such as

private hospitals or sanitariums which clearly have control over the third person who may threaten harm. Herein lies the difficulty of the case. Not only was the victim of Luiz's violence unknown, appellee did not have custody of Luiz.

To begin with, we find it useful to examine the reasons for a similar duty which can be imposed in other relationships, such as that of a parent to control his child,[4] a master to control his servant,[5] and an institutional custodian to control its wards.[6] The basis for imposing a duty on the parent, master or institutional custodian to control the conduct of a child, servant or ward is that, because of the relationship between the parties, the parent, master or institutional custodian is able or should be able to foresee the risk created by the other and can or should be able to take precautions against that risk. However, unlike the parent, master or institutional custodian who has *de facto* or *de jure* custody or control over the child, servant or ward, the appellee did not have custody or control over Luiz. In the absence of control over Luiz, we find no special relationship between the appellee and Luiz. The cases cited by the appellants support this basic principle. *See Hicks v. United States*, 511 F.2d 407 (D.C. Cir. 1975); *Greenberg v. Barbour*, 322 F. Supp. 745 (E.D. Pa. 1971); *Merchants National Bank and Trust Co. v. United States*, 272 F.Supp. 409 (D.N.D. 1967); *Underwood v. United States*, 356 F.2d 92 (5th Cir. 1966). These cases involve the negligence by hospitals which had custody of a dangerous third person, and with the possible exception of *Greenberg*,

---

[4] Day v. Day, 8 Haw. 715 (1891); Holodook v. Spencer, 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974); Poncher v. Brackett, 246 Cal.App.2d 769, 55 Cal.Rptr. 59 (1966); Restatement (Second) of Torts § 316 (1965).

[5] Nakagawa v. Apana, 52 Haw. 379, 477 P.2d 611 (1970); Abraham v. S. E. Onorato Garages, 50 Haw. 628, 446 P.2d 821 (1968); Restatement (Second) of Torts § 317 (1965).

[6] Ajirogi v. State, 59 Haw. 515, 583 P.2d 980 (1978); Rieser v. District of Columbia, 563 F.2d 462 (D.C.Cir. 1977), *modified* 580 F.2d 647 (D.C.Cir. 1978); Semler v. Psychiatric Institute of Washington, D.C., 538 F.2d 121 (4th Cir. 1976), cert. denied, 429 U.S. 827 (1976); Merchants National Bank and Trust Co. v. United States, 272 F.Supp. 409 (D.N.D. 1967).

the cases also involve identifiable victims. *Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 564 P.2d 1227 (1977), and *Rieser v. District of Columbia*, 563 F.2d 462 (D.C.Cir. 1977), *modified*, 580 F.2d 647 (D.C.Cir. 1978), involve the *release from custody* of known dangerous prisoners and do not support appellants.

A closer analogy may be the doctor-patient relationship which can impose a duty on the physician to warn foreseeably endangered persons of the risk of harm created by a patient's conduct. *Hofmann v. Blackmon*, 241 So.2d 752 (Fla.App. 1970); *Wojcik v. Aluminum Company of America*, 18 Misc.2d 740, 183 N.Y.S.2d 351 (1959). The doctor's duty arises not out of any physical custody but from his professional relationship with the third person who may be likely to cause harm to another. The duty is owed, however, only to those persons who are *foreseeably* endangered. A recent case involving the doctor-patient relationship is *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976), another case heavily relied on by appellants. In that case, the court recognized a psychiatrist's duty to warn or otherwise protect potential victims of a patient who the psychiatrist realized or should realize is dangerous. While it is true that in *Tarasoff*, the duty to take action to protect a person from harm at the hands of a dangerous third party was imposed in the absence of custody, the *Tarasoff* court found that the doctor-patient relationship, in and of itself, was sufficient to impose that duty. The prosecuting attorney did not, and ordinarily does not, exercise a degree of supervision over a conditionally released defendant which could compel a conclusion that the professional relationship between the parties was a form of custody. We therefore affirm the judgment of the trial court.

*Paul F. Cronin (L. Richard Fried, Jr.*, on the briefs, *Cronin, Fried, Sekiya, Haley & Kekina* of counsel) for Plaintiffs-Appellants.

*James E. Ross*, Deputy Corporation Counsel for Defendant-Appellee.