FRANCIS KAU and DOUGLAS WADA, Plaintiffs-Appellants, *v.*
CITY AND COUNTY OF HONOLULU, Defendant-Appellee, and
JOHN DOES I-X, JOHN DOE PARTNERSHIPS I-X, JOHN
DOE CORPORATIONS I-X, and JOHN DOE GOVERNMEN-
TAL ENTITIES I-X, Defendants

NO. 10391

(CIVIL NO. 65362)

FEBRUARY 20, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This is an appeal from a summary judgment in favor of defendant
City and County of Honolulu (City) in a negligence action. Plaintiffs
Francis Kau and Douglas Wada (collectively Plaintiffs) seek reversal of
the judgment on procedural grounds and on the merits. We affirm.

The following facts are not in dispute. The City, a municipal corpo-
ration, maintains and operates the Ala Wai Golf Course which is open

to the public. Around 2:30 a.m. on May 27, 1980, Plaintiffs and Stephen Kanda (Kanda) were at the golf course waiting to obtain an early tee-off time. While they were in the club house lanai area, they witnessed Harry Kapu, Wayne Kama, and Warren Kama burglarize the starter's office and flee. Warren Kama returned and forced Plaintiffs and Kanda to walk to the ninth hole where they were ordered to lie down on their stomachs. They were then repeatedly stabbed with a pocket knife and robbed.[1]

On April 23, 1981, Plaintiffs sued the City alleging negligence by its failure

> to provide adequate security measures . . . adequate security guards . . . and . . . adequate lighting to insure the safety of the public while on the premises of ALA WAI GOLF COURSE, when [the City] knew that its failure to provide such measures would expose the public to danger.

Record, Vol. I at 9-10. The City answered denying liability.

A jury trial commenced on September 17, 1984. The following day, after all parties had presented their opening statements, the City moved for a directed verdict.[2] Construing the oral motion as one for summary judgment, the trial court granted it over Plaintiff's objection.

On October 10, 1984, the City filed a written motion for summary judgment. On October 24, 1984, Plaintiffs filed a memorandum in opposition to the motion with 24 annexed exhibits consisting of portions of transcripts of the September 18, 1984 court proceedings and depositions of different witnesses, request for admissions, and answers to interrogatories. A hearing on the motion was held on October 31,

---

[1] Harry Kapu, Wayne Kama, and Warren Kama were apprehended and admitted the burglary, stabbing, and robbery.

[2] The City's motion followed a chamber conference with the presiding judge, Honorable Richard Y.C. Au, and counsel for both parties present. Plaintiffs allege that during this conference "Judge Au indicated that he would entertain a Motion for Summary Judgment from [the City] which would dismiss all of [Plaintiffs'] claims." Opening Brief at 30. Judge Au "dispute[d], unalterably" Plaintiffs' interpretation of what occurred at the conference. Transcript of Oct. 31, 1984 Proceedings at 7. The City's counsel's recollection was that the "Court did not tell us to file a motion. The Court inquired if we were prepared to make a motion, which we said that we were prepared and had been prepared to make all along[.]" *Id.* at 23. No court reporter was present to record the statements made at the conference.

1984.[3] On December 3, 1984, orders granting the motion and the judgments were filed.[4] Plaintiffs' timely appeal followed.

I.

Citing *Clarke v. Civil Service Commission,* 50 Haw. 169, 434 P.2d 312 (1967), Plaintiffs contend that the trial court lacked jurisdiction to dispose of the case by summary judgment since the 10-day notice requirement of Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1981),[5] had not been met. We hold that, even if the granting of the oral motion may have been improper, the granting of the written motion met the requirements of Rule 56(c), HRCP.

In *Clarke* the court had granted summary judgment *sua sponte* without giving opposing counsel an opportunity to be heard. The supreme court held that a trial court may not grant summary judgment "without notice and without a hearing on the matter contrary to provisions of Rule 56." *Clarke,* 50 Haw. at 171, 434 P.2d at 313. However, violation of the notice requirement does not automatically result in a reversal. *Clarke's* progeny holds that *"absent a showing of harm,* the failure of the trial court to comply with the requirement of ten days' notice of hearing set forth in H.R.C.P. Rule 56(c) is not reversible error." *Jensen v. Pratt,* 53 Haw. 201, 202, 491 P.2d 547, 548 (1971) (emphasis added). *See also Shelton Engineering Contractors, Ltd. v. Hawaiian Pacific Industries, Inc.,* 51 Haw. 242, 456 P.2d 222 (1969).

The record indicates that Plaintiffs have failed to demonstrate prejudice or harm as a result of the court's action. Granted, the City's September 18, 1984 oral motion failed to give Plaintiffs the required Rule 56(c) 10-day notice of hearing. However, the City's October 10, 1984 written motion gave Plaintiffs proper notice. Plaintiffs did file a

---

[3]On October 31, 1984, the court also held hearings on Plaintiffs' "Motion for Disqualification of Judge" filed on October 17, 1984, and "Motion Compelling Settlement of Order and Judgment" on the oral motion for summary judgment, filed on October 22, 1984. The court denied the former motion and granted the latter.

[4]The trial court filed two separate orders and judgments—one for the September 18, 1984 oral motion for summary judgment and the other for the October 10, 1984 written motion for summary judgment.

[5]Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1981), provides in part: "The motion shall be served at least 10 days before the time fixed for the hearing."

memorandum and other papers in opposition to the motion and had an opportunity to be heard. Thus, Plaintiffs were not prejudiced.

Accordingly, we hold that the summary judgment is not reversible on procedural grounds.[6]

II.

In granting the City's motion for summary judgment, the trial court reasoned that, viewing the evidence and reasonable inferences therefrom in the light most favorable to Plaintiffs, as a matter of law (1) the City could not have reasonably foreseen the criminal acts of assault and robbery on the golf course by third parties and (2) the criminal conduct of the third parties was the superseding legal cause of Plaintiffs' injuries. Plaintiffs argue, however, that the issue of reasonable foreseeability was one of fact determinable by the jury and, consequently, summary judgment was improper.

The recent case of *Wolsk v. State,* 68 Haw. ___, 711 P.2d 1300 (1986), compels our affirmance. As an inferior tribunal, this court is obligated "to adhere to the decision" of the "court of the last resort[.]" *Robinson v. Ariyoshi,* 65 Haw. 641, 653, 658 P.2d 287, 297 (1982) (quoting *Kapiolani Estate v. Atcherley,* 21 Haw. 441, 454 (1913)).

In *Wolsk,* unknown assailants brutally attacked two campers in a state park, resulting in the death of a camper and severe injury to the other. In affirming the trial court's summary judgment for the State, the supreme court held that the "State owed no duty to warn or protect [the two campers] from the criminal conduct of unidentified third persons at [a State] Park[,]" *Wolsk,* slip op. at 7, on the basis that "no special relationship duty existed requiring the State to warn or protect [the two campers]." *Id.* slip op. at 6.

The supreme court stated the general rule that the "State owes a duty to exercise reasonable care and warn park users about dangerous condi-

[6]After the filing of the written motion for summary judgment, Plaintiffs moved to disqualify Judge Au from the case. Plaintiffs assert on appeal that the court's granting of the written motion was error since the motion to disqualify should have been granted. We disagree. The affidavits accompanying the motion to disqualify were legally insufficient. *See State v. Iaea,* 55 Haw. 80, 515 P.2d 1250 (1973). Also, we cannot determine the truth or falsity of the allegations in the affidavits as to what Judge Au said at the chamber conference since no court reporter was present. *See* note 2 *supra.*

Plaintiffs' assertions of other procedural errors are without merit.

tions which are not known or reasonably discoverable by persons of ordinary intelligence[,]" *Id.* slip op. at 3, but that the "State is not liable for dangerous conditions not under its control." *Id.* The court also quoted Restatement (Second) of Torts §§ 314(A) and 315 (1965)[7] and declared that "[i]n the absence of a special relationship, State is not liable to plaintiffs harmed by the criminal conduct of unknown third persons on State property." *Id.* slip op. at 4. Despite Restatement (Second) of Torts § 314(A)(3) which specifies the relationship between "[a] possessor of land who holds it open to the public" and "members of the public who enter in response to his invitation" as a special one, the court found "no special relationship duty" under the facts in *Wolsk*.[8] *Id.*

---

[7]Restatement (Second) of Torts §§ 314A and 315 (1965) read as follows:

§ 314A. Special Relations Giving Rise to Duty to Aid or Protect

(1) A common carrier is under a duty to its passengers to take reasonable action.

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

§ 315. General Principle

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

[8]In holding that the State owed no duty to warn or protect the two campers from the criminal conduct of third persons, the supreme court cited *Hulsman v. Hemmeter Development Corp.*, 65 Haw. 58, 647 P.2d 713 (1982); *Namauu v. City and County*, 62 Haw. 358, 614 P.2d 943 (1980); *Ajirogi v. State*, 59 Haw. 515, 583 P.2d 980 (1978); *Freitas v. City and County*, 58 Haw. 587, 574 P.2d 529 (1978); and *Seibel v. City and County*, 61 Haw. 253, 602 P.2d 532 (1979). In *Hulsman, Namauu, Freitas*, and *Seibel*, the victims of the criminal acts of third persons were not injured or killed on land possessed by the State or the City and County and held open to the public. In *Ajirogi*, the criminal act (operating a stolen car at an excessive speed on the wrong side of a roadway, while fleeing from the scene of a burglary, and crashing into a car occupied by the victims) occurred on presumably a public roadway, but the issues there involved the duty of the State under Restatement (Second) of Torts § 319 (1965) while in charge of a person having dangerous propensities and foreseeability, rather than special relationship duty.

The basis of the court's reluctance to find a special relationship duty under the facts in *Wolsk* was that "the third persons who harmed [the two campers] . . . were never alleged to be under [the] State's control[.]" *Id.* slip op. at 6.

Likewise, in the case at bar, the City, a municipality, is not liable for dangerous conditions not under its control, *Seibel v. City and County,* 61 Haw. 253, 602 P.2d 532 (1979), and Plaintiffs never alleged that the three perpetrators of the criminal acts on the City's golf course were under the control of the City. Consequently, as in *Wolsk,* the City had no special relationship duty to protect Plaintiffs from the criminal acts of third persons.

Affirmed.

*Sharon On Leng (Melvin Y. Agena* with her on the briefs; *Turk & Agena, Attorneys at Law, A Law Corporation,* of counsel) for plaintiffs-appellants.

*James R. Aiona, Jr.* Deputy Corporation Counsel, City and County of Honolulu, for defendant-appellee.

CONCURRING OPINION BY BURNS, C.J.

I agree with Part I of the majority opinion. Regarding Part II, I concur. However, I would have reached that result even if *Wolsk v. State,* 68 Haw. ___, 711 P.2d 1300 (1986), did not require affirmance.

"In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an *unreasonable risk* of harm to them arising out of the act. The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty." Restatement (Second) of Torts § 302 comment a (1965) (emphasis added).

The relation between a possessor of land who holds it open to the public and members of the public who enter in response to his invitation is a special relation. *See* Restatement (Second) of Torts § 314A(3) (1965). In Hawaii, the relation between a possessor of land and all persons reasonably anticipated to be on the premises is a special relation. *See Pickard v. City & County,* 51 Haw. 134, 452 P.2d 445 (1969).

In my view, the question of the existence of a duty involves four elements:

1. Is defendant a possessor of the premises upon which plaintiff was injured?

2. Is plaintiff a person reasonably anticipated to be on the premises?

3. Did defendant foresee or anticipate or should defendant have foreseen or anticipated in ample time to avert injury that there was an *unreasonable risk* of that kind of physical harm to the victim?[1]

4. Is it in the public interest to impose a duty?

The possessor's duty is to protect persons reasonably anticipated to be on the premises against the *unreasonable risk* of physical harm.[2] In other words, the possessor has no duty to protect such persons where he neither knows nor should know in ample time to avert the harm of an *unreasonable risk* of physical harm to them. *See* Restatement (Second) of Torts § 314A comments e and f (1965). Moreover, when deciding whether there was a duty, the situation must be viewed as it existed before the physical harm occurred, not with 20-20 hindsight. *Schlegel v. Knoll,* 427 S.W.2d 480 (Mo. 1968).

Thus, a reasonable explanation for the result in *Wolsk, supra,* is that as a matter of law the State did not owe a duty to the campers because it neither knew nor should have known in ample time to avert the harm of an *unreasonable risk* that the campers would be brutally attacked by unknown assailants. Likewise, in this case, the City did not owe a duty to the golfers because it neither knew nor should have known in ample time to avert the harm of an *unreasonable risk* that the golfers would be brutally attacked by Kapu and robbed by the Kamas.

As noted in *Mitchell v. Branch,* 45 Haw. 128, 136, 363 P.2d 969, 975 (1961), " '[t]here is normally no reason to anticipate wilful wrongdoing of others. . . . In exceptional situations even wilfully wrongful acts of others are normal and expectable.' Bohlen, *Studies in the Law of Torts,* (1926), pp. 504, 505." In my view, neither *Wolsk, supra,* nor this case involved exceptional situations.

---

[1]In my view, questions with respect to foreseeability are more appropriately allocable to the issue of whether the defendant owed the plaintiff a duty rather than to the issue of causation. *See* Annot., 100 A.L.R.2d 942 (1965). The Hawaii Supreme Court has not taken a consistent position on this issue. *Compare Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 647 P.2d 713 (1982), with *McKenna v. Volkswagenwerk,* 57 Haw. 460, 558 P.2d 1018 (1977).

[2]*See* 57 Am. Jur. 2d *Negligence* §§ 54-63, 206-208 (1971).