PERLA CUBA, individually and as Special Administratrix of the Estate of **HENRY S. CUBA, SR.**, and as guardian ad litem for **HENRY SIMEON CUBA, JR.**, a minor, **DEBRA CUBA**, and **BERNADETTE CUBA**, Plaintiffs–Appellants, v. **JAIME RANESIS FERNANDEZ, ROBERT MIDEL, THE ESTATE OF JAMES CAMPBELL; F. E. TROTTER, INC., W. H. McVAY, INC., P. R. CASSIDAY, INC.,** and **H. C. CORNUELLE, INC.**, the duly appointed, qualified and acting **TRUSTEES UNDER THE WILL AND OF THE ESTATE OF JAMES CAMPBELL, DECEASED**, and **OAHU SUGAR COMPANY, LTD.**, Defendants–Appellees, and **JOHN DOES 1–20, DOE PARTNERS 1–20, DOE CORPORATIONS 1–20**, and **DOE ENTITIES 1–20**, Defendants

No. 14237

(CIV. NO. 87–1373)

NOVEMBER 27, 1990

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

628

## OPINION OF THE COURT BY MOON, J.

Plaintiffs–Appellants Perla Cuba, individually and as Special Administratrix of the Estate of Henry S. Cuba, Sr., and as guardian ad litem for Henry Simeon Cuba, Jr., a minor, Debra Cuba, and Bernadette Cuba (collectively Cuba), appeal an order granting Defendant–Appellee Oahu Sugar Company, Ltd. (Oahu Sugar) summary judgment. Cuba claims that the negligence of Oahu Sugar was responsible for the death of Perla Cuba's husband, Henry Cuba. Henry Cuba was shot by defendant Jaime Ranesis Fernandez (Fernandez) while attending a cockfight promoted by defendant Robert Midel, which was held on land leased to Oahu Sugar.[1] Oahu Sugar moved for summary judgment on the ground that it had no duty to protect Henry Cuba from the criminal conduct of Fernandez, and therefore it was not negligent in connection with Henry Cuba's death. The trial court agreed with Oahu Sugar and granted summary judgment in its favor. Cuba appeals both the order granting summary judgment and the trial court's denial of a motion for reconsideration of that order, alleging:

(1) the trial court erred by ruling that Oahu Sugar had no special relationship with Henry Cuba or Fernandez that would create a duty to protect Henry Cuba from the criminal acts of Fernandez; and

(2) the trial court abused its discretion in denying Cuba's motion for reconsideration based on its conclusion that the law respecting premises defects did not apply.

---

[1] Following the entry of order granting summary judgment, Cuba dismissed without prejudice defendants Fernandez and Robert Midel. Cuba also dismissed with prejudice the remaining named defendants: The Estate of James Campbell and F. E. Trotter, Inc., W. H. McVay, Inc., P. R. Cassiday, Inc., and H. C. Cornuelle, Inc., the trustees of the Campbell Estate. Campbell Estate owned the land in question that was leased to Oahu Sugar.

Upon review, we find that summary judgment was properly granted and therefore we affirm.

## I.

On May 10, 1985, Fernandez shot Henry Cuba resulting in his death. At the time of the shooting, Henry Cuba was attending a cockfight being held on land leased to Oahu Sugar. The vacant lot where the cockfight was held is directly across the road from plantation housing known as Varona Village.[2] Cockfights were held at the same location virtually every weekend for some time before the incident which led to Henry Cuba's death. Hundreds of persons reportedly attended these events at which food, beer, and other beverages were sold. The organizer and referee of the event on the day Henry Cuba was killed was an Oahu Sugar employee, Robert Midel. Before Henry Cuba was killed, witnesses saw him engage in a series of altercations with several men, including Robert Midel and Fernandez. At some point after his fight with Henry Cuba, Fernandez left the cockfight area, reappeared with a handgun, and shot Henry Cuba four times.

The evidence shows that Oahu Sugar knew about the cockfights on its land since at least October 1984, when the Honolulu Police Department sent a letter to Oahu Sugar's President, William Balfour, advising him of the cockfighting and requesting his assistance to eliminate such activity. Balfour gave the police permission to enter Oahu Sugar's property to investigate and make arrests. The cockfights abated in late 1984; however, by the time of Henry Cuba's death in May 1985, the illegal activity had resumed on a regular basis.

---

[2] Oahu Sugar controls approximately 30,000 acres of land near Varona Village as part of the operation of its sugar plantation. Varona Village is located in the Ewa area of Oahu.

In April 1987, Henry Cuba's widow, Perla Cuba, filed a complaint on behalf of herself, her husband's estate, and their children seeking damages as a result of his death.[3] Cuba's complaint alleges that Oahu Sugar held its property open to the public with the knowledge that illegal cockfight games were occurring on the property, and that Oahu Sugar owed a duty of care to persons attending the cockfights. Cuba asserts that Oahu Sugar was negligent in failing either to prevent cockfight games on its land or to provide security during the illegal activity.

## II.

Our review of an award of summary judgment involves the same standard that applied to the trial court's determination of the original motion. *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989). Thus, in order to affirm the lower court's judgment in this case, we must determine that there is no genuine issue of material fact, and that Oahu Sugar is entitled to judgment as a matter of law. *Id.* A careful review of the record reveals that the material facts surrounding Henry Cuba's death are not in dispute. We therefore turn to the question of whether Oahu Sugar is entitled to a judgment that it was not negligent in connection with the death of Henry Cuba.

A prerequisite to any negligence action is the existence of a duty owed by the defendant to the plaintiff. *See Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 385, 742 P.2d 377, 383 (1987). Whether such a duty exists is a question of law. *Id.* With respect to a duty to control the conduct of others, Hawaii law follows the **Restatement (Second) of Torts** § 315 (1965), which provides:

---

[3] The Verified Complaint was filed on April 27, 1987. On April 30, 1987, Cuba filed an Amended Verified Complaint. On July 14, 1988, Cuba moved for leave to file a Second Amended Verified Complaint. The trial court denied the motion. Cuba is not appealing the order denying leave to amend.

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

*See Wolsk v. State*, 68 Haw. 299, 301, 711 P.2d 1300, 1302 (1986). The "special relations" referred to in § 315 are defined in **Restatement (Second) of Torts** § 314A (1965) to include the following four situations:

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

*See also Wolsk*, 68 Haw. at 302, 711 P.2d at 1302.

Viewing the facts in the light most favorable to Cuba (*see King v. Ilikai Properties, Inc.*, 2 Haw. App. 359, 362, 632 P.2d 657, 660 (1981)), we conclude that in this instance the **Restatement** principles are not applicable. Cuba attempts to rely on § 314A(3), which specifies that a special relationship arises

between one who holds his land open to the public and those members of the public who enter in response to his invitation. Cuba argues that Oahu Sugar's alleged indifference to the cockfighting encouraged such activity which attracted public attendance on its property. However, we are not persuaded that "indifference" may be equated with "invitation." In our view, to hold one's land open to the public requires some affirmative action signalling that entry is desired rather than simply disregarded. **See Restatement (Second) of Torts** § 332 comment b (1965) ("an invitation is conduct which justifies others in believing that the possessor *desires* them to enter the land") (emphasis added). From the record in this case, we discern no such desire on the part of Oahu Sugar. Accordingly, we are not prepared to recognize a special relation between Oahu Sugar and the persons attending the cockfights.

Even if we assume in this case that the land in question was held open to the public, we find that Oahu Sugar had no control over Fernandez's behavior, and thus, it had no duty to protect Henry Cuba. We reached a similar result in *Wolsk v. State*, 68 Haw. 299, 711 P.2d 1300 (1986), where this court, citing the principles set forth in **Restatement (Second) of Torts** §§ 314A and 315, held that no special relationship duty existed on the part of the State of Hawaii to protect campers in a State park from the criminal conduct of third persons. In *Wolsk*, one camper was killed and another injured by unknown attackers. Plaintiffs sued the State for negligence. Because the State did not have control over the unknown assailants in *Wolsk*, this court found that there was no duty to warn campers or to protect them from harm. Summary judgment was therefore affirmed. *See also Kau v. City & County*, 6 Haw. App. 370, 722 P.2d 1043 (1986) (City had no duty to protect patrons of municipal golf course from criminal acts of third persons where third persons were not under City's control).

Cuba argues that Fernandez, as a "guest" of Varona Village tenants, was within the "reasonable control" of Oahu Sugar. The

facts of this case, however, do not indicate the control necessary to give rise to a duty of care. *See Wolsk*, 68 Haw. at 303, 711 P.2d at 1303 (duty would arise in parent, master, or institutional custodian who has custody or control of child, servant, or ward) (citing *Seibel v. City & County*, 61 Haw. 253, 260, 602 P.2d 532, 538 (1979)). In addition, Cuba asserts that Oahu Sugar had control over the land on which the cockfight games were held. The fact that a landholder controls his land is nothing more than a truism. In the cases in which our courts have found no special relationship duty, the landholders could all be said to have controlled their property. *See, e.g., Wolsk*, 68 Haw. 299, 711 P.2d 1300 (1986); *Kau*, 6 Haw. App. 370, 722 P.2d 1043 (1986); *King*, 2 Haw. App. 359, 632 P.2d 657 (1981). We do not agree with Cuba's position that Oahu Sugar had a duty to prevent people from coming onto its property simply because it owned the land.

Furthermore, we reject Cuba's attempt to invoke a landlord–tenant relationship to come within the parameters of a special relation under the **Restatement**. Although Cuba acknowledges that neither Henry Cuba nor Fernandez were tenants of Varona Village, Cuba asserts that both were guests of Oahu Sugar's tenants. However, the record shows that the cockfights and the shooting of Henry Cuba occurred on land that was not tenant–occupied. The land in question was in fact a vacant lot that was not subleased by Oahu Sugar.[4]

Cuba also contends that Oahu Sugar, knowing of the "real likelihood of danger to participants and bystanders if the illegal activities got out of hand," should have either provided security for those attending the cockfights or warned them that there was no

---

[4] We note that this court has in the past declined to recognize landlord–tenant or analogous relationships as giving rise to a special relationship duty. *See, e.g., Moody v. Cawdrey & Assocs., Inc.*, 6 Haw. App. 355, 721 P.2d 708, *rev'd*, 68 Haw. 527, 721 P.2d 707 (1986) (following *King v. Ilikai Properties, Inc.*, 2 Haw. App. 359, 632 P.2d 657 (1981)).

security. Similar arguments in other cases in which there existed much closer relationships between the parties than the relationships presented in this case have been rejected by our courts. For example, in *King*, plaintiffs were the lessee of a condominium unit in a Waikiki hotel and her guest who had been attacked in the unit by unidentified robbers. They sued the owner of the unit, the condominium association, and the operator of the hotel for negligence. With respect to the defendant hotel, plaintiffs argued that "because hotels attract dangerous persons," the hotel should have posted warning signs and increased its security measures. 2 Haw. App. at 362, 632 P.2d at 661. In the view of the Intermediate Court of Appeals, plaintiffs' position was unreasonable. In this court's view, Cuba's position is likewise unreasonable. Without a special relationship such as common carrier–passenger, innkeeper–guest, or custodian–inmate, Oahu Sugar owed no duty to warn or to protect Henry Cuba. *See id.*

The *King* court affirmed the trial court's order granting summary judgment to all defendants. The court found that there was no special relationship between plaintiffs and any of the defendants—landlord, hotel operator, or condominium association—that would give rise to a duty to protect plaintiffs from the criminal acts of third parties.

This court adopted *King* when we affirmed the trial court's grant of summary judgment in *Moody v. Cawdrey & Associates, Inc.*, 6 Haw. App. 355, 721 P.2d 708, *rev'd*, 68 Haw. 527, 721 P.2d 707 (1986). In *Moody*, the guests of condominium owners were assaulted and robbed by two men who somehow gained entry to their unit. There had been prior burglaries, rapes, and break–ins in the condominium project, of which the condominium association was aware. Plaintiffs sued the condominium association for negligence, and the trial court granted summary judgment in favor of the association. On appeal, the Intermediate Court of Appeals held that the landlord–tenant relationship was included among the "spe-

cial relations" that give rise to a duty to provide protection against criminal acts. The court also extended the duty to a condominium association with respect to its owners. This court reversed the decision of the Intermediate Court of Appeals and affirmed summary judgment on the basis of *King*. *Moody*, 68 Haw. 527, 721 P.2d 707 (1986).

Under the circumstances of the present case, we are not convinced that the definition of a special relation should be expanded so as to impose a duty on landholders to control the criminal conduct of third parties.

## III.

In addition to appealing the trial court's order granting summary judgment in favor of Oahu Sugar, Cuba appeals the order denying Cuba's motion to reconsider the summary judgment. Our review of a denial of a motion for reconsideration is limited to determining whether the lower court abused its discretion. *Stahl v. Balsara*, 60 Haw. 144, 587 P.2d 1210 (1978). Because we conclude that summary judgment in this case was proper, we also conclude that the trial court did not abuse its discretion in denying the motion for reconsideration. Moreover, we note that Cuba presented no new arguments in requesting reconsideration, but merely cited irrelevant law concerning premises defects.

## IV.

Based on the foregoing, we conclude that the trial court properly granted summary judgment in favor of Oahu Sugar. Accordingly, the judgment is affirmed.

*Ronald Au* for Plaintiffs–Appellants.

*J. Robert Arnett, II* (*Roy A. Vitousek, III* and *Lorraine H. Akiba* with him on the brief) for Defendant–Appellee Oahu Sugar Company, Ltd.