BARRY KRAFT and FRANCES KRAFT, Plaintiffs-Appellants, Cross-Appellees, *v.* STEPHEN L. BARTHOLOMEW and MARJORIE K. BARTHOLOMEW, Defendants, and AMERICAN ABSTRACT AND ESCROW, INC., Defendant-Appellee, Cross-Appellant

NO. 6695

DECEMBER 10, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY PADGETT, J.

This case involves an appeal and a cross-appeal from a judgment entered below and an order for remittitur. Appellants Barry Kraft and Frances Kraft were awarded a judgment of $11,606.56 against Appellee, Cross-Appellant American Abstract and Escrow, Inc. The court below, pursuant to motion, reduced the jury award to $8,200 and entered an amended judgment therefor. Appellants appeal from the reduction in the judgment and from the granting of a partial directed verdict in favor of appellee preventing appellants from recovering $12,000 which they had paid to Stephen L.

Bartholomew and Marjorie K. Bartholomew. The Bartholomews were defendants below who were dismissed without prejudice because no service could be made upon them. Appellee cross-appeals contending a directed verdict should have been entered in its favor at the close of appellants' evidence.

Three issues are presented in this appeal. First, whether appellee had a duty in the circumstances of this case to inform appellants, upon inquiry by them, what had been revealed in the preliminary title report with respect to the property in question. We hold that there was such a duty and that therefore, appellee's motion for a directed verdict was properly denied. Second, whether the court below erred in entering a remittitur without giving to appellants the alternative of a new trial. We hold that the court's action was erroneous. Third, whether the court below erred in granting a verdict in favor of the appellee with respect to the $12,000 deposit paid by appellants to the Bartholomews. We hold that there was no error in so partially granting appellee's motion for a directed verdict.

On October 6, 1975, appellants entered into an exchange agreement with the Bartholomews whereby they were to acquire the Bartholomews' premises at 580 North Kalaheo Street, Kailua, Oahu, Hawaii. That agreement provided that escrow was to be handled by Appellee American Abstract and Escrow, Inc. On October 7th, appellants delivered to Stephen Bartholomew a cashier's check of $12,000 made out to Bartholomew as payee as a down payment on the Kalaheo Street premises. In November, appellants moved in to the premises. On December 17, 1975, appellants and the Bartholomews executed a Deposit, Receipt, Offer and Acceptance agreement setting forth the terms of their transaction. Pursuant to the request of Bartholomew, appellants made a check for $100 for "escrow fees on 580 North Kalaheo" and turned it over to Bartholomew with the payee left blank. Bartholomew told them, at the time, that he was ninety per cent certain he would use appellee's services. Bartholomew apparently filled in appellee's name as the payee and delivered the check and a copy of the DROA to appellee.

Appellee cashed the check, assigned an escrow number to the transaction, placed its employee Mary Castro in charge of the matter and ordered a preliminary title search. That search, which is dated December 29, 1975, and which was delivered to appellee early in January, revealed a plethora of encumbrances against the title of the Bartholomews to the premises in question including judgment liens, mortgages and delinquent taxes. Beginning in January, appellants made numerous inquiries of appellee as to what was holding up the closing of the transaction. Appellee never gave a copy of the title search to the appellants although it gave one to Bartholomew. It claimed to have given a copy to Hawaii National Bank with the permission of appellants in April of 1976 although the records of Hawaii National Bank refuted that claim.

Although the evidence is not without conflict, the jury could have believed from the testimony of Appellant Barry Kraft that all the appellee ever revealed to him was that there was some problem closing the transaction but it looked like everything was going to be okay; that he was unable to get specifics from appellee as to what the problem was; that he accordingly made inquiry of Bartholomew who assured him that the problem had to do with a dispute with Fireside Thrift over interest charges; and that when he reported this to appellee, he was left with the impression that that was the problem. Appellee knew that there were, in fact, a whole multitude of problems including, as we have said, mortgages, judgment liens and delinquent taxes.

There is also evidence from which an inference could have been drawn by the jury that while appellee's president admitted that appellants should have been told that the title was not clear and that there were clouds on the title, they were not, in fact, so told despite their inquiries. Appellee's president did take the position in his testimony that appellee had no responsibility to inform appellants of the lis pendens against the property in question when the appellants made inquiry as to what was holding up the closing of the transaction.

During the period that appellants were making their inquiries, they were also expending money on the improvement

of the premises in reliance on the belief that the transaction would close. In August, they discovered through a phone call from the Mortgagee Fireside Thrift that a mortgage foreclosure suit had been pending since the inception of the transaction. Eventually, the property was foreclosed and appellants lost the down payment which they had made as well as the monies they had spent in improving the premises. There was testimony from them as to resulting mental anguish, pain and suffering.

At the close of appellants' evidence, appellee moved for a directed verdict. The court granted the directed verdict with respect to the claim for the $12,000 paid to Bartholomew, apparently on the ground that the appellants were at least as much at fault if not more than the appellee in the loss of that money. The other issues were permitted to go to the jury. The court below also denied appellee's requested instructions to the effect that there was no contract between appellants and appellee and that appellee owed no duty to the appellants. The jury returned the verdict for $6,506.56 special damages and $5,100 general damages. A judgment pursuant thereto was entered.

Appellee then moved for judgment *non obstante veredicto*, for a new trial and for the granting of a remittitur. The court below denied the motion for judgment *non obstante veredicto* but reduced the amount of the judgment to the amount of specials (exclusive of the $12,000) claimed by the appellants, or $8,200. The order granting the remittitur did not give the appellants the option of accepting the remittitur or undergoing a new trial. An amended judgment accordingly was entered and this appeal followed.

Appellee contends that, absent escrow instructions requiring it to do so, it was under no duty upon appellants' inquiry to reveal to them that there were problems with the title of the premises in question. Numerous cases are cited by both sides from other jurisdictions, none of which involve a set of facts closely paralleling those which we have here.

Appellee accepted and cashed appellants' check for escrow fees. It assigned an escrow number to the account, put Mary Castro in charge thereof and ordered a preliminary title

search. From the evidence it received, the jury could have believed that when appellants asked appellee what was causing the delay in closing the escrow, appellee did not inform them that the title to the property in question was encumbered by mortgages, liens, lis pendens and delinquent taxes but led them to believe that everything would be cleared up; that when appellants were unable to ascertain the details as to the problems with closing from the appellee, they made inquiry of Bartholomew, who told them that it was an interest problem with Fireside Thrift; that appellants came back, reported that to appellee, and were left with the impression that the interest question with Fireside Thrift was, in fact, the problem; and that in reliance on the belief that the transaction would close, induced at least in part by appellee's failure to reveal upon inquiry the numerous and very serious encumbrances of the title in question, the appellants expended monies on the improvement of the premises which expenditures were lost to them when the property was foreclosed and which caused them grievous mental suffering.

We are not called on in this case to pass upon precisely what appellee was under a duty to reveal to the appellants. What we hold is that where appellee entered into a contractual arrangement with the appellants, received information derogatory to the title of the premises in question, misled the appellants when they asked what was holding up the closing, knew from what appellants told them that they were being fed information by the seller which was false or at least incomplete and failed to tell them that there were problems with the title, there was evidence upon which a finding of breach of duty and causation could have been made by the jury. Accordingly, the motion for directed verdict was properly denied.

Turning to the issue involving the remittitur in this case, we think it is accepted that the constitutional right to a trial by jury in cases of this nature forbids a reduction of a jury verdict except when the party having the benefit of that verdict is given the option of receiving a new trial. 11 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 2815. Appellee correctly moved for a remittitur or a new trial in the

alternative but the court in granting the motion did not offer the alternative to the appellants. The form of order which was prepared by appellee's counsel followed what the court had said at the hearing and omitted any mention of an alternative of a new trial. Appellants' counsel approved the form of order as to form but appellee's counsel, at oral argument, waived any reliance on that approval.

Appellee argues, however, that it was incumbent upon the appellants to move for a new trial if they wanted one and having failed to do so, cannot now complain. We cannot accept this argument because the court below lacked authority to enter a remittitur without making it an alternative to a new trial. The only way in which a remittitur can be granted is as an alternative to a new trial since otherwise the right to trial by jury, which is constitutionally guaranteed, would be taken away by the court. We will not permit a quibble over the form of order to deprive the appellants of their constitutional right. Therefore, we hold that the court below erred in granting a remittitur without presenting to appellants the alternative of accepting a new trial.

In the normal case where the alternative new trial or remittitur order is properly entered, the appellant is presented with an election between accepting a new trial or standing on a contention that the remittitur was improper. Here, in the trial court, appellants were not presented with the opportunity to make such an election. Therefore, they now argue that the remittitur was erroneous because the verdict was not such as to shock the conscience of the court and they also argue that assuming that the remittitur was not so erroneous, they are entitled to a new trial. Just as we would not permit the appellee to take advantage of the error in the order below, we will not permit the appellants to do so on appeal and we will order a new trial. Furthermore, in the exercise of our discretion, we order that the new trial be on all issues including liability and not on damages alone.

With respect to the $12,000 paid by appellants to Bartholomew, that payment occurred long prior to the involvement of appellee in the transaction. Appellants relied upon Bartholomew to make the arrangements with the appellee; they

never made inquiry as to whether the $12,000 had been deposited by Bartholomew into the escrow until they found out that the foreclosure was going to proceed. At that point, Bartholomew either had fled or was about to flee the jurisdiction. We see no duty in the circumstances on appellee to reveal that the $12,000 was not in escrow absent an inquiry with respect thereto by the appellants. We hold that the court below was correct in excluding the $12,000 *per se* as an item of damage to be considered by the jury and hence uphold the partial direction of verdict in favor of the appellee.

Appellants argue, however, that they were prohibited from arguing to the jury that had the defects in title been timely revealed to them by the appellee, they would have had an opportunity to pursue Bartholomew to attempt to recover the $12,000 while he was still in the jurisdiction and that they should have been able to so argue to the jury for its consideration in arriving at the amount of general damages. It is not at all clear from the record that the appellants were prohibited from making such an argument. The whole matter is being remanded for retrial. What arguments the appellants may make on a retrial will depend upon the evidence adduced at that time. Accordingly, we go no further than to hold that the court below properly refused to permit the $12,000 payment to be considered as an item of damages *per se* and was correct in granting the partial directed verdict.

Reversed and remanded for a new trial.

*Edward C. Kemper (Kemper & Watts* of counsel) for plaintiffs-appellants, cross-appellees.

*Daral G. Conklin (George T. Aoki* on the briefs, *Conklin & Schneider* of counsel) for defendant-appellee, cross-appellant.