BOARD OF DIRECTORS OF THE ASSOCIATION OF APARTMENT OWNERS OF REGENCY TOWER CONDOMINIUM PROJECT, a Horizontal Property Regime, Plaintiff, *v.* REGENCY TOWER VENTURE, a joint venture of REGENCY TOWER DEVELOPMENT, INC., and ROSS & READ VENTURES, Defendants-Appellees, Cross-Appellants, and JO PAUL ROGNSTAD & ASSOCIATES, ARCHITECTS, INC.; JO PAUL ROGNSTAD, individually, Defendants-Appellants, Cross-Appellees, and MICHAEL M. ROSS, CARLOS R. READ, individually; NAKAKURA CONSTRUCTION COMPANY, LIMITED; RICHARD M. LIBBEY, INC., Defendants, and HONOLULU ROOFING COMPANY, LTD., Defendant and Third-Party Plaintiff, *v.* MASONRY BUILDERS, INC., a Hawaii corporation; HAWAII PAINTING & WALLCOVERING, INC., a Hawaii corporation; COMMERCIAL SHEETMETAL CO., INC., a Hawaii corporation, Third-Party Defendants

NO. 7494

CIVIL NO. 50103

OCTOBER 13, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* This is a case involving an appeal and a cross-appeal from an amended judgment entered by the trial court after a jury trial in favor of Appellee/Cross-Appellant Regency Tower Venture, against Appellants/Cross-Appellees Jo Paul Rognstad & Associates, Architects, Inc. and Jo Paul Rognstad, individually.

The questions presented on direct appeal are whether the trial court erred in refusing to grant a motion to dismiss, a motion for bifurcation, and a motion for a directed verdict or for a judgment notwithstanding the verdict. On cross-appeal, the questions presented are whether the trial court erred in granting a motion for a directed verdict, a motion for judgment notwithstanding the verdict, and a motion for amendment of the judgment. We affirm in part and reverse in part.

In the main action below, the Board of Directors of the Association of Apartment Owners of the Regency Tower Condominium,

instituted an action based on alleged defects in the design and construction of the Regency Tower Condominium. Regency Tower Venture (hereinafter "Regency"), Jo Paul Rognstad & Associates, Architects, Inc. (hereinafter "Rognstad Associates") and Jo Paul Rognstad, individually (hereinafter "Rognstad"), as well as the general contractor and various subcontractors were named as defendants. All defendants cross-claimed against each other. Eventually, all claims were settled except for the actions between Regency (the developer), Rognstad Associates (the architectural corporation), and Rognstad (the sole stockholder of Rognstad Associates), which went to trial. This is the sole action before us.

The facts briefly are as follows: In early 1971, Rognstad approached William Lim and Morris Hironaga with proposals to develop the Regency Tower Condominium. On April 27, 1971, Rognstad, Lim and Hironaga executed a standard form AIA contract wherein Rognstad Associates was engaged to serve as the project's architect for a fee of six per cent of construction costs.

On September 16, 1971, Rognstad, Lim and Hironaga modified their previous agreement by executing another agreement which set architectural fees at $20,000 and gave Rognstad a "sandwich sublease" which would yield $2,140 a month. In addition, Rognstad was to obtain the leasehold interest of Mr. and Mrs. Watters Martin and assign those interests over to Lim and Hironaga. Rognstad was also to receive several units of the condominium project upon completion. Construction costs were by then estimated to be four million dollars.

On February 12, 1972, the parties modified their previous agreement by penciling in various amendments. Architectural fees were set at $120,000. The yield from the sandwich sublease was set at $12,000 a year for 30 years. Rognstad was to receive only one unit upon the project's completion.

Subsequently, Rognstad, Lim and Hironaga realized that they could not muster the requisite financing for the project's development. At this point, Michael Ross and Carlos Read, the principals of Ross & Read Ventures became involved. The parties agreed that a joint venture would be suitable to all involved. On November 16, 1972, Regency Tower Development, Inc. (a newly formed corporation whose principal officers were Rognstad, Lim and Hironaga) and Ross & Read Ventures, formed the joint venture Regency

Tower Venture for the sole purpose of developing the Regency Tower Condominium.

Ross & Read Ventures became the managing partner of Regency and successfully acquired the leasehold rights of the Martins and successfully developed the project. The architectural plans previously drawn by Rognstad Associates were utilized for the project.

The construction of the Regency Tower was completed by December 9, 1974. On December 10, 1974, Regency assigned the lease previously acquired from the Martins to Rognstad.

On December 3, 1976, the Board of Directors of the Association of Apartment Owners of Regency Tower instituted the main action against Regency, Rognstad Associates, Rognstad, et al. On December 7, 1977, Regency filed a cross-claim against Rognstad Associates and Rognstad. Regency's cross-claim was subsequently amended on November 13, 1978.

The first count of Regency's cross-claim against Rognstad Associates and Rognstad is moot and is not at issue. The second count sets forth a claim for damages as a result of Rognstad Associates and Rognstad's failure to adequately design a ground floor day care center. The third count sets forth a claim for damages as a result of Rognstad Associates and Rognstad's failure to adequately specify and supervise the installation of clear glass in the condominium project. The fourth count sets forth a claim for the cost incurred in replacing the wrongfully specified obscure glass with clear glass. The fifth count sought damages as a result of architectural malpractice. The sixth count sought a return of $115,000 paid to Rognstad on "incorrect information and belief". The seventh count has not been appealed and is not at issue. The eighth count alleged that Regency paid $75,000 to Rognstad and had assigned the sandwich sublease to Rognstad on "incorrect information and belief" and due to mistake. The eighth count also alleged that Rognstad had never been employed by Regency and was not entitled to any type of compensation.

Prior to the trial, Rognstad Associates and Rognstad filed a motion entitled "Motion to Dismiss or for Summary Judgment or for Directed Verdict". This motion was based on Hawaii Revised Statutes (HRS) § 657-7, the two-year statute of limitations governing actions based on damages to person or property, and was directed at

counts two through five. With respect to counts six through eight, the defenses of estoppel, laches and failure to state a claim upon which relief can be granted were asserted. Arguments were heard at the close of plaintiff's case, and the court orally denied the motion to dismiss based on the statute of limitations but directed a verdict in favor of Rognstad Associates and Rognstad with respect to counts six through eight insofar as those counts involved the payment of architectural fees in the amount of $120,000, and the assignment of the sandwich sublease.

Prior to the trial, Rognstad Associates and Rognstad also filed a motion for bifurcation with respect to counts six through eight. This motion was based on the argument that those counts were founded on the equitable claims of unjust enrichment and mistake and should be heard by the court without a jury. Arguments on this motion were also heard at the close of plaintiff's case, and the court denied the motion.

After both sides had rested at trial, Rognstad Associates and Rognstad made an oral motion for a directed verdict with respect to count two, four, five, six, seven and the remaining portion of count eight insofar as it involved the mistaken payment to Rognstad of $75,000. The motion was denied. Regency made an oral motion for directed verdict as to that portion of count eight relating to the mistaken payment of $75,000 to Rognstad as a finder's fee. The motion was denied.

On February 23, 1979, the jury returned its special verdict in favor of Regency. A judgment for $39,860 against Rognstad Associates and $75,000 against Rognstad was filed on March 9, 1979.

On March 13, 1979, Rognstad Associates and Rognstad filed a motion for judgment notwithstanding the verdict and for new trial. This motion was granted in part by setting aside the jury's verdict with respect to its finding of architectural malpractice in the design of the day care center. The motion for a new trial was denied.

On March 19, 1979, Rognstad Associates and Rognstad filed a motion to alter or amend the judgment. This motion was granted. The court reduced the judgment entered against Rognstad Associates by the amount of $5,000. The amended judgment was filed on April 9, 1979. This appeal followed.

In its appeal, Rognstad Associates and Rognstad contend that the trial court erred in failing to dismiss counts three and five as

being barred by the statute of limitations set forth under HRS § 657-7. We agree.

Counts three and five set forth claims for damages as a result of architectural malpractice and are thus governed by the provisions of HRS § 657-8 (as amended).[1]

The basic policy underlying statutes of limitations is to require the prompt assertion of claims. *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 433 P.2d 220 (1967). The statute of limitations begins to run when the plaintiff knows, or in the exercise of reasonable care should have discovered that an actionable wrong has been committed. *Basque v. Yuk Lin Liau*, 50 Haw. 397, 441 P.2d 636 (1968); *Waugh v. University of Hawaii*, 63 Haw. 117, 621 P.2d 957 (1980); *Jacoby v. Kaiser Foundation Hospital*, 1 Haw. App. 519, 622 P.2d 613 (1981).

Here, there is evidence as a matter of law to establish that Regency knew that an actionable wrong had been committed against its property. With respect to count three, the evidence indicates that Regency knew of the improper delivery and installation of obscure glass long before its original cross-claim against Rognstad Associates was filed. On May 23, 1974, Michael Ross received a letter from Nakakura Construction Company, the general contractor, stating that delay would result in the completion of the project if the obscure glass they had on hand was not immediately installed. Ross responded by demanding that the obscure glass be installed and later replaced with clear glass, which was originally contemplated, at no

---

[1] HRS § 657-8 states in part:

*Limitation of action for damages based on construction to improve real property.* No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of any condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against the owner of the real property or any other person or the surety of a person having an interest therein or in the improvement or against any person or the surety of a person constructing, altering, or repairing the improvement, or manufacturing or furnishing materials incorporated in the improvement, or performing or furnishing services in the design, planning, supervision, observation of construction or administration of construction contracts for any construction, alteration or repair of the improvement to real property more than two years after the cause of action has accrued, but in any event not more than six years after the date of completion of the improvement.

cost to Regency Venture. Ross apparently held Rognstad Associates to blame for the wrongful specification, delivery and installation of obscure glass. Regency's cross-claim, however, was not filed until February 7, 1977. Under the circumstances, the trial court erred in failing to dismiss count three as being barred by the statute of limitations set forth in HRS § 657-8.

With respect to count five, the evidence establishes that Regency knew or should have known that an actionable wrong had been committed. Count five sets forth claims for damages as a result of additional and unanticipated construction costs arising from architectural malpractice. At trial, Michael Ross testified that he was the project's principal supervisor and overseer. He visited the project site at least twice a week and sometimes more often. His son provided him with almost daily reports with respect to what stage construction was in and what defects, if any, had been discovered. Ross also stated that he was responsible for the day-to-day administration of the project and was solely responsible for keeping track of disbursements made by the construction lender. Under these circumstances, it is clear that Ross should have known of the additional and unanticipated construction costs which were accruing long before the completion of the project. Even assuming that December 13, 1974 (the date the Owner's Notice of Completion was filed), marks the accrual of Regency's cause of action, a cross-claim filed on February 7, 1977, is barred by the provisions of HRS § 657-8. Thus, the trial court erred in failing to dismiss count five of Regency's first amended cross-claim as being barred by the statute of limitations.

Rognstad Associates and Rognstad next contend that the trial court erred in failing to grant the motion for bifurcation with respect to that part of count eight which alleged Rognstad had been paid $75,000 by mistake and under incorrect belief. We find no merit in this contention.

Rognstad Associates and Rognstad argue that because count eight uses the words "unjust enrichment" and "mistake", the claim sounds in equity and must be heard by the court without a jury. However, it is a well-established rule that there is no constitutional right to a trial by the court without a jury. *See, Beacon Theatres v. Westover*, 359, U.S. 500, 79 S.Ct. 948, 3 L.ed.2d 988 (1959); *Hurwitz v. Hurwitz*, 136 F.2d 796, 798-99 (D.C. Cir. 1943); *Great American Ins. Co. v. Johnson*, 25 F.2d 847, 850 (4th Cir. 1928), *cert. denied*, 278 U.S.

629, 49 S.Ct. 29, 73 L.ed. 548 (1928); 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, *Civil* § 2317 (1971).

Moreover, in *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.ed.2d 44 (1962), the United States Supreme Court stated that:

[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is, as we pointed out in *Beacon Theatres,* the absence of an adequate remedy at law.

The court also noted that:

[W]here both legal and equitable issues are presented in a single case, only under the most imperative circumstances, . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims.

*Dairy Queen, supra,* at 470. *See, Harada v. Burns,* 50 Haw. 528, 445 P.2d 376 (1968).

In the instant case, the real question presented is whether the jury's verdict is simply advisory or binding. In an action which is triable to the jury as a matter of right, the jury's verdict is final and binding. In an action involving equitable claims, the jury may render a verdict which the court may use as an advisory aid in making findings of fact.

Here, the only relief demanded is a recovery of money and the action is one at law and triable to the jury as a matter of right. The evidence established that Rognstad Associates and Rognstad had been paid a total of $190,000. Of this amount, the trial court had held on Rognstad's motion that $120,000 was validly paid as architectural fees. The remaining $70,000 was claimed by Rognstad to have been paid to a corporation called Zamco Engineering, Inc. as a "finder's fee". Regency contended that there was never any agreement with respect to a "finder's fee" and that it had no knowledge of any corporation doing business under the name of Zamco Engineering, Inc. Thus, Regency sought to recover the excess $70,000 as a simple debt due to overpayment.

In light of the relief prayed for and the facts alleged, we hold that Regency's claim was triable to the jury as a matter of right and

accordingly affirm the trial court's denial of the motion for bifurcation.

Rognstad Associates and Rognstad's final contention is that the trial court erred in not granting a motion for a directed verdict and a motion for a judgment notwithstanding the verdict with respect to that part of count eight, which involved the mistaken payment of $75,000.

Rule 50(b), HRCP, states in part:

Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict.

The standard for granting a judgment notwithstanding the verdict is precisely the same as the standard for directing a verdict. The motion can be granted only if the motion for directed verdict should have been granted. 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, *Civil* § 2537 at 599 (1971).

The motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the verdict.

5 MOORE'S FEDERAL PRACTICE § 50.07[2] (1948). Under Rule 50(b), if there are contested issues of fact appropriate for submission to the jury, it is error to grant a motion for judgment n.o.v. *Berry v. U.S.,* 312 U.S. 450, 61 S.Ct. 637, 85 L.ed. 945 (1941); *Brodrick v. Derby,* 236 F.2d 35 (10th Cir. 1956).

Here, there was a substantial conflict in the evidence with respect to Rognstad's transmittal of $75,000 to Zamco Engineering, Inc. as a

finder's fee. Rognstad testified that all the parties involved knew about the request relating to a finder's fee. Rognstad produced checks in the amount of $75,000 which named Zamco Engineering as payee. On the other hand, Michael Ross testified that he had never heard of any corporation named Zamco Engineering until a week before trial. Ross also testified that although $200,000 had been fixed as the architect's fee in the project's budget, that amount had been deliberately inflated to cover unexpected contingencies and to increase Regency's net profit upon completion of the project.

In light of the obvious conflict in the evidence, we conclude that there were contested issues of fact which were properly submitted to the jury and we affirm the trial court's denial of the motion for a judgment notwithstanding the verdict.

On cross-appeal, Regency's first contention is that the trial court erred in directing a verdict in favor of Rognstad regarding the existence of an architectural contract and $120,000 in fees. We disagree.

> On a [defendant's] motion for a directed verdict, the evidence is to be viewed in the light most favorable to the party opposing the motion, and where from the evidence a jury could reasonably conclude that the plaintiff's claim is sustainable, the motion should be denied. *Stewart v. Budget Rent-A-Car,* 52 Haw. 71, 470 P.2d 240 (1970); *Royal State Nat'l. Ins. v. Labor Bd.,* 53 Haw. 32, 487 P.2d 278 (1971). Conversely, where the evidence is not sufficient to take the case to the jury, the trial court should grant the motion for a directed verdict.

*Shannon v. Waterhouse,* 58 Haw. 4, 5, 563 P.2d 391, 393 (1977).

The question presented here is whether viewing the evidence in the light most favorable to Regency, the jury could have reasonably concluded that no architectural contract existed between Regency and Rognstad Associates. If there was enough evidence presented from which a jury could reasonably conclude that no contract had been entered into or assumed by Regency, then the issue should have been submitted to the jury.

Viewed in the light most favorable to Regency, the evidence presented was clearly not sufficient for the jury to reasonably conclude that no contract existed between the parties.

The only evidence introduced from which the jury could infer

the non-existence of an architectural contract were Michael Ross' bare statements that he had not known or approved of any architectural contract after the formation of Regency. On the other hand, in addition to the obvious fact that services had been rendered and accepted, Ross testified that prior to the formation of Regency, Hironaga had approached him and stated that he had a "moral obligation" to assign the project's sublease to Rognstad upon the project's completion in addition to paying Rognstad $120,000. On cross-examination, Ross admitted that although he was unclear as to which architectural agreement was final, he had acknowledged Hironaga's obligation and had stated that he would attempt to honor the commitment. In addition, Ross' testimony disclosed that of the $200,000 budgeted for architectural fees, $120,000 would be validly disbursed and $80,000 secretly pocketed. Regency subsequently relied upon the plans supplied by Rognstad Associates in constructing the project. Notices of substantial completion were executed by Rognstad, Ross and the general contractor. Regency's cross-claim itself makes reference to the existence of an architectural agreement and the damages which resulted from its breach. The joint venture agreement signed by Ross, Read, Hironaga and Lim, required Regency Development to contribute to Regency all plans and studies which had been previously prepared in connection with the development of the project.

In light of the evidence introduced at trial, we agree with the trial court that Regency had not presented evidence from which the jury could properly infer the absence of an architectural contract and we affirm the trial court's granting of a directed verdict in favor of Rognstad Associates and Rognstad.

Regency's next contention is that the trial court erred in granting Rognstad Associates and Rognstad's motion for a judgment notwithstanding the verdict with respect to the jury's finding that there was architectural malpractice in the design of the day care center. We disagree.

As stated above, a judgment n.o.v. under HRCP 50(b) is improper if there is conflicting evidence, or issues of fact which are appropriate for submission to the jury. 5 A MOORE'S FEDERAL PRACTICE § 50.07[2] (1948).

In the proceeding below, Regency attempted to establish that the day care center was inadequately designed for use as a commercial

day care center. Rognstad Associates and Rognstad contended that the center was only required to meet the accessory use standard[2] of the City and County's comprehensive zoning codes and was designed primarily for use by the occupants of the building.

The record below reveals an obvious conflict in the evidence. Michael Ross testified that Regency had always believed that a commercial day care center which would cater to the general public and would operate at a profit was being designed. However, due to numerous defects in the center's design and the unit's general failure in meeting applicable governmental regulations,[3] the unit could never be sold as a day care center and was eventually sold to the Board of Directors of the Association of Apartment Owners of the Regency Tower for use as a meeting room. Rognstad testified that the center was designed only to meet the accessory use standards set forth in the comprehensive zoning code and was intended to accommodate only the occupants of the building.

In light of the obvious conflict in the testimonies, the issue of whether the day care center was to be designed primarily for use by the occupants of the building or for use by the general public, was one which was properly submitted to the jury. However, although we do not agree with the trial court's rationale for setting aside the jury's verdict, the verdict will not be reinstated because the record indicates that it is barred by the statute of limitations. On or about January 22, 1975, Regency received a letter from Helen Inouye, a prospective purchaser of the day care center, which stated that the

---

[2] "Accessory Use. An 'accessory use':
    (1) Is a use which is conducted on the same zoning lot as the principal use to which it is related (whether located within the same building or an accessory building or structure, or as an accessory use of land), or which is conducted on a contiguous lot (in the same ownership), and
    (2) Is clearly incidental to, and customarily found in connection with such principal use, and
    (3) Is operated and maintained substantially for the benefit or convenience of the owners, occupants, employees, customers, or visitors of the zoning lot with the principal use."
(City and County of Honolulu, C.Z.C., Art. 1, Sec. 21-1.10; 1969 as amended.)

[3] Because of inadequate ventilation, a substandard kitchen, play area and parking lot, Regency was never able to obtain a certificate of occupancy or a certificate of usage.

center's design did not comply with applicable governmental standards. At that time, the statute began to run. Because Regency's cross-claim was filed after the period of limitations had expired, the jury's verdict will not be reinstated.

Regency's final contention is that the trial court erred in amending the judgment by reducing it in the amount of $5,000. We agree.

It has been generally held that except in those cases in which it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, the court may not arbitrarily reduce the amount of damages for to do so would deprive the parties of their constitutional right to a jury. *Kennon v. Gilmer*, 131 U.S. 22, 9 S.Ct. 696, 33 L.ed. 110 (1889); *May v. Ellis Trucking Co.*, 243 F.2d 526 (6th Cir. 1957), *cert. denied*, 355 U.S. 816, 78 S.Ct. 18, 2 L.ed.2d 33 (1957); 11 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, *Civil* § 2815 (1971).

Here, the jury found that Rognstad had been paid $75,000 in excess of what he was owed. The court, however, reduced the jury's verdict by $5,000. The court apparently rationalized that since the evidence had established that Rognstad had received a total of $190,000, of which $120,000 was owed as architectural fees, $70,000 was the only amount which could have properly been paid by mistake. The court, however, did not present Regency with an election between accepting a new trial or agreeing to the reduction in the jury's verdict. As we recently stated in *Kraft v. Bartholomew*, 1 Haw. App. 459, 620 P.2d 755 (1980),

> The only way in which remittitur can be granted is as an alternative to a new trial since otherwise the right to trial by jury, which is constitutionally guaranteed, would be taken away by the court.

*See also, Arkansas Valley & Land Cattle Co. v. Mann*, 130 U.S. 69, 9 S.Ct. 458, 32 L.ed. 854 (1889); *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.ed.2d 582 (1966); *Brewer v. Uniroyal, Inc.*, 498 F.2d 973 (6th Cir. 1974).

As in *Kraft, supra*, we hold that the court below erred in granting a remittitur without presenting to Regency the alternative of accepting a new trial.

Affirmed in part and reversed in part and remanded for entry of judgment in accordance herewith.

*Robert K. Fukuda* for appellants/cross-appellees.

*Larry T. Topliss* for appellees/cross-appellants.