CORRADO GUASCHINO and MOIRA McVIE, Plaintiffs-Appellees, *v.* EUCALYPTUS, INC., a Hawaii corporation, and LAWRENCE ENTERPRISES, a general partnership, Defendants-Appellants

NO. 7755

(CIVIL NO. 3427)

JANUARY 26, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This action involves two agreements, one between plaintiff Corrado Guaschino (Corrado) and defendant Eucalyptus, Inc., a Hawaii corporation (Eucalyptus), hereinafter called the "Eucalyptus Agreement," and the other between plaintiffs Corrado and Moira McVie (Moira) and defendant Lawrence Enterprises, a general partnership (Enterprises), hereinafter referred to as the "Enterprises Agreement." Corrado and Moira are hereinafter sometimes collectively referred to as "plaintiffs," and Eucalyptus and Enterprises, as "defendants." Defendants appeal from the jury verdict and judgment holding them liable in damages for the breach of both agreements.

The dispositive issues on appeal are:

A. As to the Eucalyptus Agreement, whether the trial court erred in granting in part plaintiffs' cross-motion for partial summary judgment. We hold that it did, and reverse.

B. As to the Enterprises Agreement, whether the trial court erred in granting in part plaintiffs' cross-motion for partial summary judgment, in denying defendants' motion for judgment notwithstanding the verdict (hereinafter "judgment n.o.v."), in refusing to give defendants' requested Instruction No. 13 concerning duress, and in asking the jury to answer a special interrogatory as to the validity and enforceability of the agreement.[1] We answer no, and affirm.

---

[1] Defendants' point on appeal that the trial court erred in granting plaintiffs' motion for directed verdict pertaining to the affirmative defenses of mistake of fact

John B. Lawrence (John) and Sharon D. Lawrence (Sharon), husband and wife, each own fifty percent of the shares of Eucalyptus stock. John is the president of Eucalyptus. John and Sharon are also the general partners of Enterprises. John or Enterprises is the lessee of the property at 730 Front Street, Lahaina, Maui.

In 1971, Corrado and Moira began renting space in an old building located on the property on a month-to-month basis at $225 per month. They operated a boutique-antique shop called Bibah in the rented space.

Corrado and John entered into an understanding whereby they would design and build a restaurant on the second floor of the old building. This understanding was reflected in an unsigned draft memorandum dated June 18, 1973 (the Memo) prepared by John and addressed to Corrado. The Memo also provided that "very firm legal agreements" protecting Corrado would be made, which would include the "basic understandings" specified therein.

Based on the Memo, Corrado and John began working on renovation designs and plans. They soon learned that the old building could not be renovated.

Corrado and John then decided to demolish the old building and construct a new building on the property to house the restaurant. Corrado prepared the preliminary plans for a new two-story building which were then given to a local architect who worked on and completed the working drawings for construction. On February 26, 1974, John and Sharon entered into a building construction contract with contractor Gold Coast, Ltd. The old building was demolished in April 1974.

In the interim, Corrado had discussed with John the possibility of a firm lease for the Bibah shop. John orally agreed to such a lease but with rent of $400 per month. Corrado and Moira began paying rent at the higher rate. The understanding was that Corrado and Moira would have space in the new building for a lease term of three years.

Both Corrado and John exerted efforts in the completion of the new building and the Blue Max restaurant opened for business on March 24, 1975.

---

and impossibility concerns the Eucalyptus Agreement only, and not the Enterprises Agreement.

Corrado requested John to have their understanding as first evidenced in the Memo reduced to writing. John instructed his attorney to prepare two agreements which were subsequently signed and are now in dispute.

The Eucalyptus Agreement dated April 4, 1975 was executed by John, as President of Eucalyptus, and Corrado. The agreement provides, *inter alia:*

2. Eucalyptus shall pay to Dado [Corrado] for a period beginning on 10 May, 1975 and on the same day of each month thereafter until Eucalyptus sells the restaurant business conducted on the property or until said restaurant business ceases, whichever first occurs, . . . the sum of $500 per month or more at Eucalyptus' discretion until such time as Eucalyptus has cash assets equaling or exceeding $30,000 and thereafter a sum equal to 50% of the net profits after taxes from the restaurant business . . . .

John and Sharon, as general partners of Enterprises, and Corrado and Moira signed the Enterprises Agreement dated April 4, 1975. The agreement contains the following recitals:

Lawrence [Enterprises], Dado [Corrado] and Moira reached an oral agreement with respect to Lawrence's property on Front Street in Lahaina, Maui, Hawaii. Dado and Moira agreed to help Lawrence make the property rentable. In return therefor Lawrence agreed to pay Dado and Moira a portion of the rental income from that part of the property now rented to John Hurley, dba "Jade & Jewels." Dado and Moira performed their said obligations under the agreement.

The agreement states in pertinent part:

2. . . . Lawrence [Enterprises] shall pay for a period of three years beginning on 10 May, 1975 and on the same day of each month thereafter during the three year period . . . , a sum equal to the difference between $600 and the minimum rent payable under the Hurley sublease for the month preceeding [sic] Lawrence's payment. Lawrence shall pay one-half of said sum by check payble to the order of Dado [Corrado] and the other one-half of said sum by check payable to Moira.

Defendants initially made some payments under both agreements. However, due to nonpayment, on July 12, 1977, plaintiffs sued defendants for breach and damages under both agreements.

Defendants counterclaimed against plaintiffs.

On April 20, 1979, defendants moved for partial summary judgment that (1) John had no authority to bind Eucalyptus to the Eucalyptus Agreement and (2) Corrado had breached the Eucalyptus Agreement. On April 26, 1979, plaintiffs filed their cross-motion for partial summary judgment that (1) John had authority and (2) the facts of Corrado's breach were in dispute. They also sought summary judgment that both agreements were valid and binding.

After a hearing held on April 27, 1979, the trial court denied defendants' motion and granted plaintiffs' motion in part by finding that (1) both agreements were valid and binding, subject to other defenses; (2) sufficient consideration supported both agreements; and (3) John had authority to bind Eucalyptus to the Eucalyptus Agreement.

On May 8, 1979, the jury rendered its special verdict finding that (1) the Eucalyptus Agreement was valid and enforceable and Eucalyptus owed Corrado $6,500 plus interest; (2) the Enterprises Agreement was valid and enforceable;[2] (3) Corrado was not liable to Eucalyptus for damages caused by the lack of a waterproof covering on the restaurant's kitchen floor; and (4) Corrado breached an oral agreement to inform John and Sharon of any problems at the Blue Max during their absence from Hawaii, but they suffered no damage.[3]

On May 17, 1979, defendants filed their motion for judgment n.o.v., which was denied.

On October 26, 1979, the judgment was entered, and on February 21, 1980, the second supplemental judgment was filed. Defendants' appeal followed.

### I. EUCALYPTUS AGREEMENT

Defendants contend that the trial court erred in granting in part

---

[2] The parties stipulated that if the jury found the Enterprises Agreement to be valid and enforceable, the court would determine the amount owed by Enterprises to plaintiffs. In the Second Supplemental Judgment filed on February 21, 1980, the court determined that the amount owed by Enterprises was $2,513.75 plus interest.

[3] Despite the jury's finding of no damage, the court awarded Eucalyptus the sum of one dollar in damages. Eucalyptus did not appeal the jury's special verdict pertaining to its counterclaim.

plaintiffs' cross-motion for partial summary judgment, and in finding that John, as Eucalyptus' president, had authority to bind the corporation to the Eucalyptus Agreement and that the agreement was valid and binding, subject to certain defenses.[4] We agree.[5]

An appellate court will sustain a summary judgment only if the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1981); *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979); *King v. Ilikai Properties, Inc.,* 2 Haw. App. 359, 632 P.2d 657 (1981). On review, the entire record, including depositions, answers to interrogatories, admissions and affidavits, will be considered. *Gealon v. Keala,* 60 Haw. 513, 591 P.2d 621 (1979); *Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976); *Ottensmeyer v. Baskin,* 2 Haw. App. 86, 625 P.2d 1069 (1981). The facts in the record and any inferences to be drawn therefrom will be viewed in the light most favorable to the party opposing the motion. *City & County v. Toyama,* 61 Haw. 156, 598 P.2d 168 (1979); *Costa v. Able Distributors, Inc.,* 3 Haw. App. ___, 653 P.2d 101 (1982).

## A.

In support of plaintiffs' cross-motion for partial summary judgment that John, as president, had express actual authority to execute the Eucalyptus Agreement, a copy of the minutes of the January 30,

---

[4] In their Answering Brief, plaintiffs refer to the Order Denying Defendants' Motion for Partial Summary Judgment filed on December 11, 1979 (long after the jury rendered its special verdict on May 8, 1979, and after the filing of the Judgment on October 26, 1979) and argue that the trial court merely denied defendants' motion and made certain findings of fact under Rule 56(d), Hawaii Rules of Civil Procedure (HRCP) (1981). They contend that there was no order granting Plaintiffs' Cross-Motion for Partial Summary Judgment.

The Clerk's Minutes of April 27, 1979 reads that the "Court granted the [plaintiffs'] Motion to the extent of indicating that the Eucalyptus and Lawrence contracts are valid and denied other aspects of the Motion. . . . [T]he Court indicated that the contracts which the Court found to be valid would be binding on the corporation [sic]."

There was no formal written order denying plaintiffs' cross-motion in the record. Based on the Clerk's Minutes, we hold that the findings in the December 11, 1979 Order, in fact, constituted a partial granting of the cross-motion.

[5] This ruling precludes the necessity of our considering defendants' contention that the trial court erred in granting plaintiffs' motion for a directed verdict.

1975 special meeting of the stockholders of Eucalyptus was attached as Exhibit D. The memorandum in support of the cross-motion also referred to the November 15, 1974 minutes of the board of directors meeting electing John as president-treasurer of Eucalyptus.[6]

The copy of the January 30, 1975 minutes was neither sworn to nor certified and, therefore, must be disregarded. *Ailetcher v. Beneficial Finance Co.*, 2 Haw. App. 301, 632 P.2d 1071 (1981); *Lane v. Yamamoto*, 2 Haw. App. 176, 628 P.2d 634 (1981). As to the November 15, 1974 minutes, unverified statements of fact in counsel's memorandum cannot be considered in the determination of a summary judgment motion. *Au v. Au*, 63 Haw. 210, 626 P.2d 173 (1981).

Plaintiffs further claim that the by-laws of Eucalyptus provide that contracts and other instruments "shall be signed by the president or a vice president and by the treasurer or the secretary or an assistant secretary or an assistant treasurer" and that being both president and treasurer, John's signature on the Eucalyptus Agreement was sufficient to bind Eucalyptus.

However, it is not clear from the record that John was both president and treasurer of Eucalyptus when the Eucalyptus Agreement was signed on April 4, 1975. In her affidavit attached to defendants' motion for partial summary judgment, Sharon stated, "She was Secretary/Treasurer of Eucalyptus, Inc. on April 4, 1975." (Record at 461.)

Whether John had actual express authority to sign the Eucalyptus Agreement and bind the corporation was a matter for determination by the jury. *See McDonnell v. Airways Hotel, Ltd.*, 40 Haw. 265 (1953) (existence of agency is a question of fact for jury determination).

---

[6] There is no evidence in the record as to the exact location of the original minutes. In his deposition taken on April 6, 1979, attorney Sanford J. Langa testified:

Q  (By Kaulukukui) Do you know where the minutes are?
A  Well, my copies of the minutes are in the file. The originals I think for the msot [sic] part must be in a separate book somewhere which I haven't been keeping.

\* \* \* \* \*

Q  Do you know whether you have a complete copy of all the minutes of the corporation?
A  I would be inclined to think I do not. [Deposition at 5.]

## B.

Plaintiffs claim that John had apparent authority to sign the agreement and bind Eucalyptus. They seem to argue that the fact that Eucalyptus was a close family corporation and that John was the president and did sign the Eucalyptus Agreement as president was sufficient to prove apparent authority in John. We disagree.

2 *Fletcher Cyclopedia of the Law of Private Corporations* § 451, at 375 (rev. perm. ed. 1982) states:

> [T]he apparent authority of an officer or agent is to be gathered from all of the facts and circumstances in evidence, and apparent authority is determined by the acts of the principal, and not by the acts of the agent. It is the corporation that must make some manifestation that can reasonably be construed as giving the agent authority. [Footnotes omitted.]

Reviewing the evidence in the record in the light most favorable to defendants, we find that John's authority to sign the agreement was an issue, since there was no evidence of a manifestation of authority by Eucalyptus and, in fact, the Eucalyptus Agreement was opposed by Sharon. (Record at 462.)

In *Cosmopolitan Financial Corp. v. Runnels*, 2 Haw. App. 33, 625 P.2d 390 (1981), we affirmed the trial court's finding of apparent or ostensible authority in the president or manager of the corporate plaintiff. However, in that case, evidence of apparent or ostensible authority and promissory or equitable estoppel had been fully presented at trial.

The apparent authority of John, in this case, was a jury question. *See McDonnell v. Airways Hotel, Ltd., supra.*

## C.

Finally, plaintiffs argue that by subsequent acts Eucalyptus ratified the Eucalyptus Agreement. They state that payments made by Eucalyptus to Corrado constituted ratification of the agreement. Also, John and Sharon "reaffirmed" in letters to Corrado that Eucalyptus was bound by the agreement. The record indicates otherwise.

In her deposition taken on April 17, 1979, Sharon testified that all payments made to Corrado were based on her belief that he was entitled to compensation, but not under the Eucalyptus Agreement.

(Deposition at 245-46.)

One of the letters written by John to Corrado,[7] stated in pertinent part:

> We're sueing [sic] Hurley & trying to evict him. No more $ from that shop for awhile. Your agreement is valid, but we have *no* money, & must wait until we. do. [Emphasis in original.]

Corrado argues that the words "[y]our agreement is valid" reaffirmed the Eucalyptus Agreement. The inference in the light most favorable to Eucalyptus is that "[y]our agreement is valid" referred to the Enterprises Agreement since that was the agreement involving Hurley.

As to the letter from John to Corrado dated January 20, 1975,[8] the use of the words "as per agreement" does not *per se* ratify the Eucalyptus Agreement. Further, the postscript added on the reverse side of the letter by Sharon cannot be construed as ratification of the agreement, especially in light of her testimony in the April 17, 1979 deposition, "I wasn't in agreement with the [Eucalyptus] agreement, period." (Deposition at 242.)

The question of ratification involved a genuine issue of material fact, and partial summary judgment was inappropriate. *See McDonnell v. Airways Hotel, Ltd., supra* (existence of ratification is a question of fact for jury determination).

## II. ENTERPRISES AGREEMENT

### A.

Defendants contend that the trial court erred in granting in part plaintiffs' cross-motion for partial summary judgment and in finding that there was sufficient consideration to support the Enterprises Agreement and that the agreement was valid and binding, subject to certain affirmative defenses. We disagree.

First, defendants claim that plaintiffs' cross-motion was served

---

[7] This letter was dated "SEPT." and shown to John Lawrence during the taking of his deposition on April 18, 1979. At trial, it was received in evidence as Plaintiffs' Exhibit 6.

[8] John Lawrence testified in his deposition of April 18, 1979, that the date should have been January 20, 1976. (Deposition at 96.)

on their counsel on April 25, 1979 and the hearing on the cross-motion was held on April 27, 1979, contrary to the ten-day notice requirement of Rule 56(c), HRCP (1981).[9]

The record indicates the following facts. Defendants served a copy of their motion for partial summary judgment on plaintiffs' counsel on April 16, 1979 and filed the motion on April 20, 1979. The time fixed for the hearing on the motion was April 26, 1979. The date of the trial for the case had already been set to commence on April 30, 1979. At a hearing on other motions held on April 24, 1979, plaintiffs' counsel obtained the court's approval to file a cross-motion for partial summary judgment.[10] At that time, the parties were informed that *both* motions would be heard on April 27, 1979.[11] The cross-motion was served on defendants' counsel either on April 25 or 26, 1979[12] and filed on April 26, 1979.

Time strictures involved in the case left the trial court no other alternative. When defendants' motion was filed, the trial date was already ten days away. Defendants could not be afforded the luxury of a ten-day notice for the cross-motion before the fixed trial date.[13] Moreover, defendants received oral notice of plaintiffs' impending cross-motion on April 24, 1979 and had an opportunity to be heard. Further, as to the Enterprises Agreement, the questions of express or apparent authority and ratification involved in the cross-motion did not apply. Based on such circumstances, we find that Enterprises was not prejudiced by the lack of a ten-day notice and is not entitled to benefit from it. *See Jensen v. Pratt*, 53 Haw. 201, 491 P.2d 547 (1971); *Shelton Engineering Contractors, Ltd. v. Hawaiian Pacific Indus-*

---

[9] Rule 56(c), HRCP (1981), provides that a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing."

[10] *See* Plaintiffs' Cross-Motion for Partial Summary Judgment filed on April 26, 1979. (Record at 543-a.) This fact has not been contested or denied by defendants.

[11] *See* Clerk's Minutes for April 24, 1979.

[12] In the opening brief, defendants' counsel states that the cross-motion was served on her on April 25, 1979. The certificate of service attached to the cross-motion provides that defendants' counsel was served on April 26, 1979.

[13] *Tripp v. May*, 189 F.2d 198 (7th Cir. 1951), holds that under certain circumstances, there is no procedural defect in a court entering judgment on plaintiff's oral cross-motion for summary judgment at the hearing on defendant's motion for summary judgment without the requisite ten-day notice.

*tries,* 51 Haw. 242, 456 P.2d 222 (1969).

Second, relying on a dictum in the old case of *Kaleialii v. Grinbaum & Co.,* 9 Haw. 213 (1893), Enterprises urges us that being based on past consideration, the Enterprises Agreement was invalid for lack of sufficient consideration.

Its recitals clearly indicate that the Enterprises Agreement was a memorialization of an existing oral agreement between Enterprises and Corrado and Moira concerning the property. Under the oral agreement, Corrado and Moira promised to help Enterprises "make the property rentable" and Enterprises promised to pay Corrado and Moira a part of the rental income to be derived from a portion of the property to be rented to John Hurley. Mutual reciprocal promises constitute good and sufficient consideration. *Union Trust Co. v. Carey,* 36 Haw. 390 (1943). The fact that Corrado and Moira had already performed their part of the bargain at the time the oral agreement was memorialized does not convert a valid consideration into an "insufficient" past consideration. *See* 1 A. Corbin, *Corbin on Contracts* § 30, at 110 (1963).

### B.

Defendants claim that the trial court erred in denying their motion for judgment n.o.v. They argue that the Enterprises Agreement required Corrado and Moira to help Enterprises "make the property rentable" and in making the "property rentable," Corrado performed services as an architect and contractor without being licensed as required by Hawaii Revised Statutes (HRS) ch. 464 and ch. 444 (1976, as amended), respectively. Consequently, the Enterprises Agreement was illegal or unenforceable and the trial court should have granted the motion for judgment n.o.v.[14] The record does not support Enterprises' contention.

The standard for granting a judgment n.o.v. is set forth in 5A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 50.07[2] (2d ed. 1982), as follows:

---

[14] Defendants moved for directed verdict on this ground among other grounds after all parties had rested. (Transcript at 780-81.) The trial court reserved its ruling and disposed of the matter by its Order Denying Defendants' Motion for Judgment Notwithstanding the Verdict filed on October 26, 1979.

[T]he motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts. [Footnotes omitted.]

*See also Tsugawa v. Reinartz,* 56 Haw. 67, 527 P.2d 1278 (1974); *Board of Directors of the Ass'n of Apt. Owners v. Regency Tower Venture,* 2 Haw. App. 506, 635 P.2d 244 (1981).

Defendants failed to meet their burden of showing that the only reasonable conclusion from the evidence was that making "the property rentable" involved the services of Corrado as an unlicensed architect and contractor.

Another reasonable conclusion was that no such services of Corrado were required to make "the property rentable." Corrado testified that there was an understanding with John that he and Moira would be entitled to space in the new building for their Bibah shop for a term of three years. However, John preferred a tenant who would generate good gross sales so that there would be a high percentage lease rent to Enterprises. Corrado and Moira agreed to give up their space if such a tenant could be located. John found such a tenant in John Hurley. Corrado testified *inter alia* as follows:

John leased the shop to John Hurley, except that my lease, or the lease — the promise of me getting a lease still stands.

So I questioned John on that, and I said, "How are we going to work it out to each other, you know. What about my lease?"

He said, "Well, we'll work out a formula which is explained on my 19 [sic]." It's a fairly complex computation, but in any case it explains that Moira and I, we are to collect 8 percent of John Hurley's lease rent. This percent would amount to about, after we calculated, about $300 a month, and will increase to $330 and then to $360 for the third year. I might be wrong on the figure, but if I'm wrong, I'm wrong a few dollars.

And when this contract [Enterprises Agreement] was given to me, it reflected exactly what we talked about, so this agreement was written and it was signed, and everybody was happy about it.

Transcript at 99-100.

The trial court properly denied defendants' motion for judgment n.o.v.

## C.

Defendants next argue that the trial court erred in refusing to give defendants' requested Instruction No. 13 regarding the defense of duress.

Rule 51(e), HRCP (1981), provides that: "No party may assign as error . . . the refusal to give . . . an instruction . . . unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The record merely indicates that the instruction was "refused." (Record at 676 and 712.) There is nothing in the record and transcript to show that before the jury retired, defendants objected stating the grounds of their objection.

We are aware that our supreme court has construed Rule 51(e), HRCP, in a liberal manner, as noted in *Chung v. Kaonohi Center Company*, 62 Haw. 594, 618 P.2d 283 (1980). *See also Turner v. Willis*, 59 Haw. 319, 582 P.2d 710 (1978); *Struzik v. City and County*, 50 Haw. 241, 437 P.2d 880 (1968). However, upon review of the record, we hold that the state of the evidence did not require any instruction on the matter of business duress. The record reveals no plain error.

## D.

The last ground of appeal involves the special verdict form. Defendants state that the trial court instructed the jury that the Enterprises Agreement was a valid and binding contract while Interrogatory No. 5 in the special verdict form read, "Is the Lawrence [Enterprises] Agreement valid and enforceable?" Defendants argue that the combination of the jury instruction and Interrogatory No. 5 must have confused the jury, and, hence, was reversible error.

This argument is without merit. The trial court instructed the jury thusly:

The agreement between Plaintiff Guashino [Corrado] and Defendant Eucalyptus, Inc., hereinafter referred to as the "Eucalyptus Agreement," and the agreement between Plaintiffs Gua-

schino and McVie [Moira] and Defendant Lawrence Enterprises, hereinafter referred to as the "Lawrence Enterprises Agreement," are valid and binding contracts, *subject to the defenses of Defendants.*

Record at 726 (emphasis added). The trial court further instructed the jury respecting the defenses of illegal consideration, misrepresentation of material fact and fraud. We cannot perceive how the jury could have been confused.

The judgment concerning the Enterprises Agreement is affirmed, and the judgment with respect to the Eucalyptus Agreement is reversed and remanded.

*Madelyn D'Enbeau* for defendants-appellants.

*Robert J. Smolenski (Smolenski, Wooddell & Sorensen,* of counsel) for plaintiffs-appellees.

ORDER CLARIFYING DECISION

Both plaintiff-appellee Corrado Guaschino ("Corrado") and defendant-appellant Eucalyptus, Inc. ("Eucalyptus") have filed motions for reconsideration and/or clarification of decision. Despite the titles, both motions only seek clarification on certain points.

Corrado requests us to clarify our January 26, 1983 opinion to provide that if further proceedings below result in a finding that John Lawrence had authority to execute the Eucalyptus Agreement, the remaining issues in the lawsuit need not be retried.

We reversed that portion of the trial court's judgment regarding the Eucalyptus Agreement because the granting in part of plaintiffs' cross-motion for partial summary judgment was erroneous. Since reversal on that point was dispositive of the appeal, we never considered and ruled on the other points of appeal involving the Eucalyptus Agreement, namely, (1) the granting of plaintiffs' motion for directed verdict on the affirmative defenses of mistake of fact and impossibility, (2) the denial of defendants' motion for judgment notwithstanding the verdict involving the defense of illegality or unenforceability (the review of which requires the consideration of evidence other than those examined for the Enterprises Agreement), and (3) the trial court's refusal to give defendants' requested

instructions on business duress and illegality concerning a contract for architectural work by an unlicensed person.

For the foregoing reason, upon remand not only the question as to the authority of John Lawrence to execute the Eucalyptus Agreement, but all other issues will have to be retried.

Eucalyptus requests a clarification as to the status of that part of the lower court's judgment that "Eucalyptus owed Corrado $6,500 plus interest." We held that "the judgment with respect to the Eucalyptus Agreement is reversed and remanded." It follows that the part of the judgment holding that "Eucalyptus owed Corrado $6,500 plus interest" is likewise reversed and remanded.

*Madelyn D'Enbeau* for defendants-appellants.

*Robert J. Smolenski* for plaintiffs-appellees.